29137.   HODGES *v.* OCEAN ACCIDENT AND GUARANTEE CORPORATION.

DECIDED DECEMBER 5, 1941. ADHERED TO ON REHEARING, DECEMBER 18, 1941.

*G. Seals Aiken,* for plaintiff.

*John M. Slaton, James J. Slaton,* for defendant.

MacINTYRE, J. Mrs. J. H. Hodges brought a suit for damages for personal injuries against the Seaboard Loan & Savings Association and its employee, G. F. Langran, alleging that the injuries were sustained as a result of the negligence of Langran in operating the automobile of the association on the business of the association. A verdict was directed in favor of the association, and such finding was affirmed by this court. *Hodges* v. *Seaboard Loan &c. Asso.* 60 *Ga. App.* 335 (3 S. E. 2d, 843). The jury found against Langran $7500, and this finding was likewise affirmed by this court. *Langran* v. *Hodges,* 60 *Ga. App.* 567 (4 S. E. 2d, 80). See also *Hodges* v. *Seaboard &c. Asso.,* 61 *Ga. App.* 443 (6 S. E. 2d, 133), where this court affirmed a judgment directing a verdict in favor of the association in a suit by Mr. Hodges. The association was insured by the Ocean Accident & Guarantee Corporation, and Mrs. J. H. Hodges, hereinafter called the plaintiff, sued out a garnishment against the Ocean Accident & Guarantee Corporation, the contention of the plaintiff being that that corporation was indebted to Langran in the amount of the judgment which the plaintiff had secured against him, Langran being under the policy an additional insured because he was operating the automobile with the permission of said insured. The Ocean Accident & Guarantee Corporation filed its answer denying that it was indebted to Langran in any sum whatsoever, whereupon the plaintiff traversed the answer, thus making an issue for the trial court. The trial judge directed a verdict in favor of the Ocean Accident & Guarantee Corporation and to the overruling of her motion for new trial the plaintiff excepted.

The Ocean Accident and Guarantee Corporation (hereinafter called the defendant) contends that garnishment is not the proper method of asserting whatever rights, if any, the plaintiff may have had. Attempts have been made in various ways by injured persons

to reach an alleged obligation of an insurance company to an insured on account of an injury to such injured person by the latter, or by some one else coming within the terms of the policy. In determining the liability of the insurer in such proceedings the courts have adopted the rule that, if the policy is one which insures against loss or damage by reason of liability, or, in other words, is a contract of indemnity, the action can not be maintained against the insurance company, on the theory that the amount of insurance does not become due and payable until the insured has paid the loss. But if the policy is one which insures directly against liability, then the courts hold the view that the insurer is liable, on the theory that the amount of the policy up to the extent of the liability incurred by the insured on account of the accident becomes, immediately upon the happening of the event upon which the liability depends, an asset of the insured, which, in the absence of any provisions to the contrary in the policy, may be assigned by him or taken for his debt. Allen v. Ætna Life Ins. Co., 76 C. C. A. 265, 7 L. R. A. (N.S.) 958. Garnishment proceedings were resorted to and it was held that in the first instance the decision was governed by the first rule, and therefore the insurer was not liable as garnishee, but in the second instance the insurer was liable. 4 Am. Jur. 750, 751, §§ 312, 313, 314, 315. Whether garnishment would lie in the instant case involves a construction of the policy of insurance. The policy here provides that the insurer contracts "To pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law for damages . . sustained by any person or persons caused by accident and arising out of the ownership, maintenance, or use of the automobile." Such a contract has been held to be a contract to pay liabilities. It is not simply a contract of indemnity. It is more. It is also a contract to pay liabilities. The difference between a contract of indemnity and one to pay legal liabilities is that, upon the former, an action can not be brought and a recovery had until liability is discharged; whereas, upon the latter the cause of action is complete when the liability attaches. 37 A. L. R. 645; 83 A. L. R. 677 and ann. Thus, this being a contract to pay any liability, the insurer is subject to garnishment by an injured person who has recovered judgment on a claim which is within the protection of the policy (8

Cooley's Insurance Briefs, 832) ; but, of course, where the accident was one not covered by the policy there is no basis for a recovery on the policy by the injured party. 4 Am. Jur. 750, § 312.

In other words, what one can not recover himself can not be recovered by garnishment against him. *Bates & Co.* v. *Forsyth, 69 Ga.* 365 (1b). A garnishing plaintiff's position under a contract is no better than that of the debtor. *Singer Machine Co.* v. *So. Grocery Co., 2 Ga. App.* 545 (59 S. E. 473). It was held in *Holmes* v. *Pope, 1 Ga. App.* 338 (58 S. E. 281), that because the debtor can not compel the payment of money to other purposes foreign to the contract, neither can the garnishing creditor extend his rights beyond those of the debtor. Thus, applying these rulings to the facts here, if Langran was not an insured under the terms of the policy and his acts of negligence were not covered thereby, the plaintiff can not extend her rights beyond those of Langran.

After stating the general provisions as to liability the policy here, which insured Langran's employer as the named insured, provides: "The unqualified word 'insured' whenever used in coverages A and B and in other parts of this policy, when applicable to coverages, includes not only the named insured but also any person while using the automobile and any person or organization legally responsible for the use thereof provided that the declared and actual use of the automobile is 'pleasure and business' or 'commercial,' each as defined herein, and provided further that the actual use is with the *permission* of the named insured." (Italics ours.) The policy also provides in effect that any person who has secured a judgment against one insured under the terms of the policy shall thereafter be entitled to recover under the terms of this policy in the same manner and to the same extent as the insured. Thus, we think that the question resolves itself to a consideration of whether Langran, under the terms of the policy as applied to the facts of this case, was an insured. To narrow the question even further, it resolves itself as to whether Langran at the time he was driving the automobile was doing so with the permission of the named insured, to wit, Seaboard Loan & Savings Association.

Independently of the general insuring clause in an automobile liability policy, oftentimes there appears either within the policy, or by way of rider or indorsement attached thereto, a clause pur-

porting, or the effect of which is, to extend the protection of the policy to any person or persons coming within a defined group. This is the so-called "omnibus" clause. It is with a clause of this character that the instant case deals. Therefore, if under the terms of the policy Langran was not an additional insured, then the plaintiff would have no right to recover from the defendant. The omnibus clause of the policy stipulates, in so far as material to this case, that a person becomes an additional insured provided his "actual use [of the automobile] is with the permission of the named insured." What is the meaning of this provision of the policy, and how should it be applied to the facts in the present case? What is meant by the term "permission" in the omnibus clause of an insurance policy has not been ruled on by the appellate courts of Georgia so far as we have been able to ascertain. It has, however, been passed on in numerous decisions in other jurisdictions. The term "permission" is universally held to mean either express or implied permission. The only difference of opinion to be found in construing the term is whether the permission is confined to the time when the accident occurs, or whether it is defined as permission "in the first instance;" that is to say, permission to get possession of the car at the beginning of its operation is such permission as would render the insured liable even though at the time of the accident the operator of the car might have been expressly prohibited to use the car, or the operator may have been using it for a purpose wholly prohibited by the named insured. Under the doctrine of "first instance permission" the insurer is liable regardless of the purpose for which the car is being used.

It is unnecessary to collate the numerous authorities in other jurisdictions which deal with the question here involved. See 72 A. L. R. 1398-1409; 106 A. L. R. 1259-1263. Their study reveals that it is the rule in some States that if the original bailment was made with the consent of the insured it is immaterial that, subsequently, the automobile is driven to a place or for a purpose which was not within the contemplation of the insured when he parted with possession. Accordingly, the insurance company is held liable even though the accident happens while the car is being used on an errand not embraced within the limits of the permission. This is the doctrine of "first instance permission." This construction of the policy is in accord with the purpose of the

various statutes adopted by several States requiring owners of automobiles to carry indemnity or liability insurance. These statutes are enacted as a matter of public policy to protect the public using the streets and highways. The intent of the legislature is to protect those injured by automobiles, no matter who may be driving the car or where it is driven, provided the owner has voluntarily entrusted possession of the car to the driver for some purpose, and regardless of whether the person in possession of the car observes or breaks the contract of bailment. Guzenfield *v.* Liberty Ins. Co., 286 Mass. 133 (190 N. E. 23); Dickinson *v.* Maryland Cas. Co., 101 Conn. 369 (125 Atl. 866, 41 A. L. R. 500); Stovall *v.* N. Y. Indemnity Co., 157 Tenn. 301 (8 S. W. 2d, 473, 72 A. L. R. 1368); Peterson *v.* Maloney, 181 Minn. 437 (232 N. W. 790); Brower *v.* Emp. L. A. Co., 318 Pa. 440, 445 (177 Atl. 826), and cit. The legislature in this State has not adopted such a statute except as to motor common carriers. Code, § 68-612.

Whatever may be the rule in the majority of the jurisdictions, we hold that while slight and inconsequential deviations will not annul the coverage of the omnibus clause, yet there is an absence of "permission," within the meaning of the policy, if the car is being driven at a time or place or for a purpose not authorized by the insured. In other words, the decisions of the courts, in States where no statutory regulations exist requiring liability insurance, are to the effect that permission means a consent to use the car at the time or place or for a purpose authorized by the insured, express or implied. This third element requires that the purpose for which the car is used at the time of the accident be a purpose stated or intended at the time the bailment is made, but slight deviations are too unimportant to have attached to them by construction the import of annulling the protective features of the policy. Laroche *v.* Farm Bureau Mutual Auto. Ins. Co., 335 Pa. 478 (7 Atl. 2d, 361); 22 Am. Bar Asso. Journal, 616, 617. This is the rule which is applicable to the facts in this case. In arriving at this result the courts have recognized that the unauthorized using of a bailed automobile constitutes a conversion. Conversion and permission are direct antonyms and can not exist simultaneously. Since permission would not exist, there would be no reason to impose liability upon the insurer in those circumstances. We adopt the latter view as the rule to be applied in this case.

The defendant contends that the case has already been adjudicated adversely to the contentions of the plaintiff in the cases of *Hodges* v. *Seaboard Loan & Savings Asso.*, 60 *Ga. App.* 335, and 61 *Ga. App.* 443, supra. With this we can not agree. In those cases the question was whether or not Langran was operating the automobile as the agent of the insured, whereas in the instant case the question is whether or not Langran was operating the automobile with the *permission*, express or implied, of the insured. The fact that Langran was not acting as agent of the insured in the course of the insured's business at the time of the accident would not prevent his using the car with the permission of the insured at such time. *Yearwood* v. *Peabody*, 45 *Ga. App.* 451 (164 S. E. 901). See also the dissenting opinion in *Public Indemnity Co.* v. *Yearwood*, 50 *Ga. App.* 646 (179 S. E. 232). Furthermore, it may be noted that the defendant here was not a party to those suits.

The only testimony on this all important issue was that of C. Y. McCollum, witness for the plaintiff and Langran's "boss." It is not denied that Langran was driving the automobile on Sunday afternoon at the time of the accident. From a reading of the entire testimony of McCollum it is apparent that the plaintiff was attempting to prove that Langran was in the practice of using the automobile in and about his own private affairs, at times with the knowledge and express permission of McCollum (his boss), an officer of the named insured, and at other times without their knowledge or express permission, permission having always been given when asked for; that no objection having ever been made to his use of the car for his personal accommodation without their knowledge or express permission, though on numerous occasions he had afterwards told them of such use of the car, Langran's taking of the car and driving it to Newnan to put flowers on the young lady's mother's grave, though without having obtained specific permission of the officers of the named insured, was nevertheless with their permission, implied by usage and common practice, within the meaning of a clause of this character. See *Hill* v. *State*, 14 *Ga. App.* 410 (81 S. E. 248); Maryland Cas. Co. *v.* Ronan, 37 Fed. 2d, 449 (72 A. L. R. 1360). However, in this the plaintiff failed, and it appears that McCollum testified positively that he had told Langran never to use the automobile in question except for business; that he allowed Langran to go to and from work and

keep the car in a garage at Langran's house; and that he had instructed Langran positively not to use the car at night or on Sunday. This testimony of McCollum stating that Langran had no permission to drive the car on the occasion of the accident was not disapproved or contradicted in any material way by the subsequent testimony of McCollum or otherwise. The evidence that Langran did not have the named insured's permission to use the automobile on the occasion of the accident not being contradicted in a material way, and there being no evidence reasonably susceptible of opposing inferences, the judge did not err in directing a verdict for the defendant.

The plaintiff contends that the conduct alone of the defendant, its agents and its counsel, together with the alleged inconsistent positions of the defendant's counsel in representing parties having conflicting interests (Langran, the insured, and the defendant here), would have authorized the jury to find for the plaintiff. The plaintiff in effect says that the defendant investigated the case and this makes it liable. The company is given the right to investigate by express terms of the policy, and it is universally held that investigations are no admission of liability. The defendant was obligated to defend the named insured, and in order to do so had to make an investigation, which included a physical examination of the plaintiff. The record shows that the defendant was not a party to the case against Langran (*Langran* v. *Hodges,* supra), and is not bound by such judgment against Langran. The record also discloses that Langran was a $135 a month employee of the named insured, and was the driver of the automobile which collided with the automobile in which the plaintiff was riding. Three suits were brought against the insured and Langran. Langran was informed within a week that he was not an additional insured and that neither the insured nor the defendant would pay any judgment against him or for any counsel. This situation was fully explained to Langran. John M. Slaton, counsel for the defendant, offered to Langran to represent him free of charge, which he did. Langran was informed that the defendant would not pay for his counsel. There is no evidence that Langran was deceived in any way. Under the foregoing circumstances, there was no conflict that could occur in the defense of Langran and the insured; and therefore counsel did not occupy an inconsistent posi-

tion in defending Langran as well as the insured and the defendant in the instant case. The cases cited by the plaintiff in support of her contention that the conduct of the agents and attorneys of the defendant authorize a recovery by the plaintiff deal with facts that do not exist in the case at bar and are not applicable to the instant case.

Grounds 4 through 10 are but elaborations of the general grounds and have been decided adversely to the plaintiff. Grounds 11, 12, 14, 15, 16, 17, and 19 contend that the judge erred in allowing certain evidence over objection of the plaintiff. The evidence was material to the issues involved and the judge did not err in so ruling. Grounds 13, 18, and 20 through 27 all relate to the alleged erroneous rejection of certain evidence attempted to be introduced by the plaintiff. The evidence sought to be introduced was not relevant to the issues involved and the judge did not err in excluding same. Grounds 28 and 29 contend that the plaintiff was deprived of her rights under the Federal and State constitutions. No reversible error is disclosed.

The judge did not err in directing a verdict for the defendant or in overruling the motion for new trial.

*Judgment affirmed. Broyles, C. J., concurs. Gardner, J., concurs in the result.*

### ON REHEARING.

MacIntyre, J. The plaintiff contends that the court erred in holding that the uncontradicted evidence disclosed that the driver of the car did not have the permission of the insured at the time and place in question. She quotes a portion of the testimony of C. Y. McCollum, as follows: "I knew this car was being used by Mr. Langran. . . I told him to go ahead and keep it and use it to go backwards and forwards to his work. You ask me 'Didn't you tell him he could drive the car within reason at any other time, is that what you said?' And I answered 'Yes.' . . You ask me if I did not on cross-examination by Mr. Slaton at the time you took my depositions in your office on August 3, 1937, when this question was asked, 'Let me ask you this, when he would (referring to Langran) when he would come out to your house at night, would that be on business?' and your answer, 'No, he would come out to see me on a social call,' and I answer I think I said that at that time. That is what I said at that time. That

is true." Under this testimony the plaintiff contends that the evidence is conflicting, and that the case should be submitted to a jury and that it shows that Langran had permission to use the automobile on the occasion in question. When this testimony is read alone it might be subject to the construction which plaintiff has placed upon it, but in order to properly construe McCollum's testimony, it must be considered as a whole. In connection with the first portion of the testimony of McCollum, which is relied on by the plaintiff, another portion thereof must be read in connection therewith: "You ask me to state if I didn't know that Mr. Langran was driving this car for purposes other than business, and I answer, I don't think so. You ask me to state in substance what I told him. I answer, I told him he could use the car to go backwards and forwards to his work; he had a garage; and he said he could leave it in the garage at the house to save the garage bill; and I told him to go ahead and keep it and use it to go backwards and forwards to his work." In connection with the latter portion of the testimony of McCollum relied on by the plaintiff, the following should be noted: "You ask me if I will state if Mr. Langran came out to visit me on social calls prior to March 28th, 1937, in this 1935 Plymouth coupé automobile. I answer, I don't know whether you would call it social or not, he came out there at night after making these calls on customers. As to whether Mr. Langran did go out in this 1935 Plymouth coupé and make social calls on me in that automobile prior to March 28th, 1937, I don't remember him making any social calls. I remember when you took my depositions in this case of Mrs. J. H. Hodges versus the Ocean Accident Insurance Company, on August 3, 1937, at your office in the First National Bank Building. You ask me if you did not ask me this question at that time: 'Had he (referring to Langran) ever visited your home at night in that automobile?' And I answered, 'Yes, sir.' This is the question: 'Would he come out to make social calls?' And I answered, 'Yes.' I stated that. You ask if that is true and I answer, you will find further down in the statement where I answered that more specifically. You ask me if that is true now, and I answer, I don't know about the social calls, you might say it was business and social, I said that, yes. You state you are asking whether this is true that I said at that time that he would come out to make social calls. I answer,

I am trying to explain that it was social and business, if you want to call it social. . . I didn't make any complaint to him as to his driving out in my automobile; it was a business proposition. You say you are asking me with reference to these social calls, and I state, I have answered that question about three times, I think."

It unquestionably appears that when McCollum's testimony is construed as a whole there are no material conflicts, for it positively appears that he specifically instructed Langran not to use the car on Sunday or at night for pleasure; that Langran was not transacting any business for the insured on the Sunday afternoon in question, but was on a mission with which the insured was not in any way concerned. In other words, Langran had authority to use the car to go backwards and forwards to his work, but he did not have any authority to use the automobile "for anything else," and he "did not use it for his personal pleasure and social purposes with my [his boss's, the insured's] knowledge or consent." If there were conflicts in McCollum's testimony, they were immaterial and the judge did not err in directing the verdict for the defendant. *Summer* v. *Strayhorn,* 186 *Ga.* 755 (199 S. E. 108) ; *Blanchard* v. *State,* 8 *Ga. App.* 419 (69 S. E. 313) ; *Wallis* v. *Watson,* 184 *Ga.* 38, 40 (190 S. E. 360) ; 70 C. J. 782, § 963.

The plaintiff relies very strongly on Haeuser v. Ætna Cas. Ins. Co., (La.), 187 So. 684, and cases of similar import, but a thorough study of those cases reveals that those courts were applying the first-instance doctrine, which for the reasons stated in the original opinion is not applicable to the facts of this case. All the cases relied upon by the plaintiff are, for that reason, or for the reason that there was only a slight deviation, distinguished from the instant case. *Evans* v. *Caldwell,* 184 *Ga.* 203 (190 S. E. 582), relied on by the plaintiff involved a construction of the family-car doctrine, which is not involved here. Where a person to whom permission was given to use an automobile for business purposes only, including going "backwards and forwards to his work," employs the car for the personal convenience of himself and others, *wholly* disconnected with the purposes contemplated by the insured, the departure from what is contemplated may be so considerable as to terminate the permissive character of the driving. 6 Blashfield's Cyc. of Auto. Law and Practice, 332. We think the rule we have adopted and applied to the facts of the instant case is sound, and we reiterate

what was said in the original opinion. This position is sustained by ample authority which were cited only generally in the original opinion. Denny v. Royal Indemnity Co., 26 Ohio App. 566 (159 N. E. 107); Johnson v. Am. Auto. Ins. Co., 131 Me. 288 (161 Atl. 496); Kazdan v. Stein, 26 Ohio App. 455 (160 N. E. 506); Frederikson v. Employers Liability Assur. Cor., 26 Fed. 2d, 76; Columbia Cas. Co. v. Lyle, 81 Fed. 2d, 281; Powers v. Wells, 115 Pa. Super. 549 (176 Atl. 62); Byrne v. Continental Cas. Co., 301 Ill. App. 447 (23 N. E. 2d, 175).

Several interlineations have been made in our original opinion, to express more clearly our views on the law and the facts of the case. After a careful reconsideration of the case we remain of the opinion that the court did not err in directing a verdict for the defendant.

*Judgment adhered to. Broyles, C. J., and Gardner, J., concur.*