45439. AMERICAN EMPLOYERS INSURANCE COMPANY v. JOHNS et al.

ARGUED JULY 9, 1970—DECIDED SEPTEMBER 14, 1970—
REHEARING DENIED OCTOBER 7, 1970.

*Bennet, Gilbert, Gilbert & Whittle, Wallace E. Harrell,* for appellant.

*Fendig, Dickey, Fendig & Whelchel, J. Thomas Whelchel, Alaimo & Taylor, Anthony A. Alaimo,* for appellees.

EVANS, Judge. ■ The first question we have for decision is whether or not the evidence was sufficient to authorize the affirmative answer by the jury that the defendant Adkins had the implied consent of the defendants, Mr. and Mrs. Walter H. Stewart, to operate the 1968 Cadillac at the time of the collision. The evidence is clear that Adkins was employed by the Stewarts to care for Mr. Stewart, who was an invalid and unable to drive an automobile. Thus Adkins had the custody and possession of this vehicle to carry Mr. Stewart wherever he wanted to go, as a passenger. The transcript shows that Adkins, on other occasions, had been allowed to use another car of the Stewarts for his personal use. In fact, a smaller car was used by him in driving to

and from work. There was no direct testimony that he could not use the Cadillac (the insured car) for his own personal use, although the smaller car was used by him to drive home and return to work every day of his employment. Of course, if Adkins had been specifically forbidden to use the Cadillac for his own personal use, there could be no implied consent. See *Hodges v. Ocean Accident &c. Corp.*, 66 Ga. App. 431, 435 (18 SE2d 28); *Ditmyer v. American Liberty Ins. Co.*, 117 Ga. App. 512 (160 SE2d 844). While he was told which car he could use when going alone on an errand for the Stewarts, and in driving to and from work, yet he was given the keys to the Cadillac so he could transport Mr. Stewart, and on this date, to take him to the Elks Club. Never in the conversation about the use of the Cadillac was he advised to return at any certain time to pick up Mr. Stewart. In answer to a specific question, Mr. Stewart replied that he would have no objection if Adkins had wanted to run an errand during the time that Mr. Stewart was at the Elks Club. The jury was entitled to consider all of the facts and circumstances, including the relationship of the parties surrounding the use of the automobiles in arriving at whether or not a reasonable man would have inferred from such circumstances that permission was implied. It cannot be disputed that Adkins was charged with responsibility of maintaining the automobiles, that he did drive the two other automobiles of the Stewarts for his personal needs, and the mere fact that he failed to comply with the technicality of asking permission of Mr. Stewart on this specific occasion to use the automobile in question, did not prevent the jury determining that he had the implied permission of the owners on this occasion. It was quite obvious that a jury question was presented as to what reasonably could have been in Adkins' mind from the past course of events and as to the implied consent to use the automobile. The jury, as the impartial arbiter of the facts, made the determination of what could reasonably be inferred therefrom where there was no specific prohibition against Adkins driving the insured car.

We find no similar cases in Georgia based on these facts where the driver, having the custody and control of a vehicle with no specific direction not to use the vehicle, but given broad authority to drive other vehicles, becomes an additional insured under the

permissive use clause of the policy. Clearly at all times here, the master-servant relationship existed, although the servant had wide permission to do as he pleased generally, but being at the beck and call of the master. Thus, at all times the Cadillac was in his possession and control, and only if specific instructions were given to him forbidding him to drive the car on personal missions could it be said he was driving the car without implied permission. The court did not err in refusing to direct the verdict in favor of the plaintiff, or in refusing to grant the motion for judgment notwithstanding the verdict; and there was no error in denying the motion for new trial based on the general grounds alone.

■ Motions for mistrial were made by the plaintiffs when the attorney for Johns, in his opening statement, discussed at length the declaratory judgment suit which had been brought to determine insurance coverage. Counsel for Johns merely outlined the procedure of the lawsuits in general layman's language, advising the jury that his client had been enjoined from proceeding with his suit against Adkins, explaining the court was telling him "you can't proceed in your claim, you've got to stop, you can't proceed in it, you can't get any relief in it, you've got to stop that." Counsel also pointed out that the Stewarts were not parties to the suits against Johns and that the Stewarts were being sued by their own insurance company, and it was attempting to tell the Stewarts they had no insurance coverage, which they thought they had paid for. Generally, the language used in argument or opening statements by counsel may be extravagant, and such figurative speech becomes a legitimate weapon in forensic warfare, provided it does not inject facts which are not in the record and are calculated to prejudice the opposing party and render the trial unfair. *Taylor v. State,* 121 Ga. 348 (7) (49 SE 303); *Waits v. Hardy,* 214 Ga. 41, 43 (102 SE2d 590, 68 ALR2d 995); *Beecher v. Farley,* 104 Ga. App. 785, 787 (123 SE2d 184). Such comments by counsel are necessarily within the discretion of the trial judge, and unless some positive injury can be shown by the remarks of counsel, the discretion of the trial judge will not be controlled. *Adkins v. Flagg,* 147 Ga. 136 (2a) (93 SE 92); *Ga. Power Co. v. Puckett,* 181 Ga. 386 (182 SE 384); *Smith v. State,* 204 Ga. 184 (2) (48 SE2d 860).

"Trial courts 'should not restrain counsel so long as their arguments are kept within reasonable and proper bounds, and they should also be careful not to usurp the functions of the jury in accepting or in disregarding what the counsel have to say' in their arguments to the jury. *Western & A. R. Co. v. Morrison,* 102 Ga. 319, 324 (29 SE 104, 40 LRA 84, 66 ASR 173). See *Purvis v. Atlanta Northern Ry. Co.,* 145 Ga. 517 (2) (89 SE 571)." *Waits v. Hardy,* 214 Ga. 41, supra, p. 44. While discretion was exercised at the trial court level, we have serious doubts that any positive injury could have occurred, although here there was a pre-trial conference, and a single interrogatory was submitted to the jury, in which instance it was not required to pass on and did not necessarily need to know all the facts and pleadings in the case. However, counsel for Johns had the right to explain his presence in the case.

Further, the court instructed the jury: "You must disregard from your minds and from any consideration whatsoever as regards your functioning in this case the latter portion of the opening statement that Mr. Alaimo gave to you because it got into an area that you gentlemen are not concerned with. You are concerned with in this case, and this is a case for declaratory judgment, the plaintiff who brought the case has the legal right to do so, to ask for their rights and position and to interpret it by the court. The court will make such an interpretation, but your function in this case will be to pass upon, as will be explained to you further in the case and certainly in the charge by the court, one question after you have heard the evidence in this case . . . that is, did Zonnie Adkins . . . under all the facts and circumstances disclosed by the evidence have implied permission to operate the 1968 Cadillac owned by the Stewarts? That is the only question you are to be concerned with."

After further colloquy and argument, the court instructed the jury: "Members of the jury, I re-affirm all previous instruction." Thus, conceding for the sake of argument that the alleged remarks were subject to objection, the court properly instructed the jury as to disregarding such remarks and as to the sole issue that the jury would be concerned with, and the court did not err in denying the motion for mistrial. See *McCluskey v. American Oil*

*Co.,* 225 Ga. 63 (165 SE2d 830), and cases cited therein at page 65. The Supreme Court in interpreting *Code* § 81-1009 has held the trial judge has a broad discretion in handling such matters in order to avoid mistrials. The court did not err in denying the motions for mistrial.

■ On cross examination counsel for the intervenor insurance company asked the witness Stewart that if employee Adkins had ever wanted to leave and run a personal errand "would you have had any objection to his doing that," based on whether this would have called for a conclusion as to what the witness would have done under certain circumstances. The witness Stewart answered "No." The question and answer under consideration was whether or not Adkins had implied permission to operate the 1968 Cadillac automobile for his personal use. The jury was entitled to consider all the circumstances including the scienter, at the time the occurrence actually happened. See *Hodges v. Ocean Accident &c. Corp.,* 66 Ga. App. 431, 435, supra. Since the opposing party is entitled to a thorough and sifting cross examination of the witness, both the question and the answer were proper in this instance. The court did not err in allowing the answer in evidence.

■ Error is enumerated on the charge of the court that if implied consent was given "it would be just as effective as express consent." The court charged further: "I charge you that implied consent might arise as a matter of law if relationships between the parties, the circumstances surrounding the use of the automobile by the driver, the acquiescence or lack of objection under circumstances signifying assent, and all other attendant facts, conduct or action by the parties would lead a reasonable man, under the circumstances, to believe he had the permission of the owner or person in control of the automobile to operate the same." The charge is not argumentative. It was apt, relevant and material, and based on the evidence submitted on the trial. The charge was not improper since there were facts and circumstances from which the jury would have been authorized to believe that Adkins could have had the impression that he had the authority to operate the vehicle for his own personal use.

Having considered each and every enumeration argued by the appellant and finding none with merit, the court did not err in

denying the motion for new trial as amended

*Judgment affirmed. Hall, P. J. and Deen, J., concur.*