## 47535. E. RAYMOND SMITH, INC. et al. v. ALLSTATE INSURANCE COMPANY.

HALL, Presiding Judge. Defendants in an action for declaratory judgment appeal from the judgment and from the denial of their motions for new trial and judgment n.o.v.

This suit arose out of an automobile collision in which everyone was killed. The representatives of Allstate's insured have given notice of their intent to sue the estate of the driver of the other car, one Johnson. Allstate brought this action to determine whether Johnson was an uninsured motorist. Johnson was driving a car owned by a dealer who has a garage liability policy with Indiana Lumberman's Mutual. The jury returned a special verdict, affirmatively answering the question whether Johnson was operating the automobile within the scope of permission granted him. The effect of the verdict is to make him an insured under the terms of Indiana's policy.

The only evidence submitted at the trial was the testimony of two of the dealer's salesmen. They testified that Johnson had been trying to buy a car for several weeks. He had paid $200 down and was given a bill of sale and possession of a Chevrolet which he was supposed to return the next day but did not bring back for two days (with no repercussions). This car proved too expensive for his credit rating, so he chose a 1962 Electra. He took it home on the same terms and with the same understanding that he should return the next day to complete the credit work, but in fact did not return for six days (again with only an inquiry as to why he had waited so long). When he did come in, the dealer had still not procured financing for this car. Johnson also complained that the transmission fluid was leaking badly. The salesman agreed to fix it as it had cost them only $200 and they stood to make $600 if they could get the deal financed. Johnson asked for the loan of another car to drive home because he and his companion were too filthy to ride the

bus. He was given a 1956 Buick (retail value about $200) and certain instructions concerning its use and return. Both salesmen were present but one did most of the talking. He testified that he instructed Johnson not to go anywhere but home; not to be drinking or running around town in the car with his friends; and to try to bring it back the next day by noontime. The other salesman's testimony tended to indicate the major concern was the use of the car that evening because it was a Friday and payday. The first salesman also testified that he gave these instructions on the use of the '56 Buick because it was covered by his policy while the previous cars taken out on bills of sale were not; and that he had set the noon deadline because that was when they closed. However, he also testified that he told Johnson nothing about insurance; that they did not close at noon the day in question; that they rarely closed on a Saturday until 4 to 6 o'clock; and that the Electra transmission had not in fact been fixed.

Johnson had his fatal collision about 4 o'clock Saturday, approximately 25 miles from the dealer's lot. There is nothing in the record to indicate what he was doing there or where he was going. There is certainly no evidence that he was drinking or carrying friends.

1. In a previous appeal of this case, we held that a denial of summary judgment for the defendants was proper. *E. Raymond Smith, Inc. v. Allstate Ins. Co.,* 125 Ga. App. 250 (187 SE2d 337). That holding does not establish as the law of the case that there were issues of fact to go to the jury. The defendants' burden on a motion for summary judgment and on a motion for directed verdict are different. See *Kroger Co. v. Cobb,* 125 Ga. App. 310 (187 SE2d 316); Gross v. Southern R. Co., 446 F2d 1057 (5th Cir.).

2. Many of Indiana's enumerations relate to its contention that the uncontradicted evidence shows Johnson had exceeded the scope of his permission to use the vehicle, which was expressly limited to driving home Friday

night and returning the car by noon Saturday; that no implied permission to use it in any other way, no matter how slight the deviation, could arise in the face of specific instructions to the contrary. They cite *Ditmyer v. American Liberty Ins. Co.*, 117 Ga. App. 512 (160 SE2d 844); *Hodges v. Ocean Accident &c. Corp.*, 66 Ga. App. 431 (18 SE2d 28); and *Western Casualty &c. Co. v. Strozier*, 67 Ga. App. 41 (19 SE2d 433).

We believe these cases are distinguishable on their facts by their absence of any circumstances which could have formed a basis for an implied permission to use the vehicle in a manner outside the specific instructions. The cases do *not* hold that implied permission, not inconsistent with express limitations, cannot exist. Each of these cases also involved a master-servant relationship. Regardless of the details of the instructions, there was a clear prohibition against using the vehicles for personal purposes; there was no showing of past acquiescence by the master in personal use of the vehicles; and each collision occurred while the servant was clearly outside the scope of employment on his own affairs.

Here there was a history of putting Johnson into possession of automobiles with no restrictions on the type of use and with no apparent penalty for late return. On oral argument, Indiana conceded that an implied permission to return the vehicle at a later time might be found, but that the 25-mile distance to the collision site clearly and indisputably showed a deviation from the scope of permission. We believe a jury could find that the prior circumstances of general use led Johnson to believe that he could use the '56 Buick in the same way, except for drunken joyriding on Friday night. Another permissible inference would be that he understood the '56 Buick to be a substitute for the Electra until it was repaired, but that since he was not a customer for the '56 Buick he would have to be more cautious about driving it. That the other cars may have been put in Johnson's possession without insurance coverage is irrelevant since he did not

know about the distinction. As far as he was concerned, the only difference was that he was thinking of buying the first two and not the last one. In other words, the jury could have found that a reasonable man would have understood the use here to be within the scope of permission as formed both by past patterns of use and new, slightly ambiguous limitations. The jury was entitled to consider all the circumstances because they, in effect, gave definition to the scope of permission. See *American Employers Ins. Co. v. Johns,* 122 Ga. App. 577 (178 SE2d 207).

3. For the above reason, the court also did not err in refusing to allow argument concerning that provision of the insurance policy relating to lack of coverage on the first two cars or in denying the motion for mistrial which followed. That the entire policy was in evidence does not mean that every provision in it would be the subject of legitimate comment. Relevance to the issues tried is the key. In addition, the same ruling was sought and procured earlier in the trial by the appellants when the opposite parties were attempting to raise the issue.

4. All other enumerations of error are without merit.

*Judgment affirmed. Pannell and Quillian, JJ., concur.*

ARGUED OCTOBER 3, 1972—DECIDED NOVEMBER 2, 1972—REHEARING DENIED NOVEMBER 16, 1972—

*Martin, Snow, Grant & Napier, George C. Grant, Hendley V. Napier, Edward J. Harrell,* for appellants.

*Jones, Cork, Miller & Benton, Wallace Miller, Jr.,* for appellee.