George Byrne for use of Lucille M. King, Appellee, v. Continental Casualty Company, Appellant.

Gen. No. 40,423.

DENIS E. SULLIVAN, P. J., dissenting.

Opinion filed October 25, 1939.   Rehearing denied November 9, 1939.

GEORGE C. BLISS, of Chicago, for appellant.

GILMORE, HENDRICKS & CULLEN and CHARLES C. SPENCER, all of Chicago, for appellee; MATTHEW J. CULLEN and RICHARD M. SPENCER, of Chicago, of counsel.

MR. JUSTICE BURKE delivered the opinion of the court.

On March 15, 1929, the defendant issued to Charles D. Allan an automobile public liability policy for the period of one year covering a Buick automobile owned by Allan. The insurance contract contained an extended insurance clause, also known as an "omnibus clause," which provided, inter alia, that any person operating the same with the permission of the assured or of an adult member of the assured's household, would receive the protection of the policy. The as-

sured, Charles D. Allan, died on January 25, 1930, leaving as his sole legatee under his will, his widow, Catherine Allan. On that day the Allans lived at 4417 North Ashland avenue, Chicago. On the day of her husband's death, Mrs. Allan hired George Byrne as a chauffeur at a salary of $35 for a week. The purpose of hiring Byrne was so that he would drive the Buick car for Mrs. Allan on various missions occasioned by the death of her husband. During the lifetime of her husband, the car was kept in the Cornelia Garage, located in the vicinity of Broadway and Cornelia avenue, Chicago. After Byrne was hired he requested Mrs. Allan that he be permitted to keep the car in the Argyle-Clark Garage, located at 5006 North Clark street. He lived in the vicinity of the garage and by keeping the car there, he would save on street car fare. She permitted him to keep the car in that garage. On January 28, 1930, Byrne drove the car containing Mrs. Allan and some of her relatives, to the New York Central Station, where they were to take a train for New York. The car was then driven to her home at 4417 North Ashland avenue, where the remaining occupants, including Mrs. Allan, got out. She directed Byrne to put the car in the garage until the next morning, and to bring it back at 11 o'clock next morning, when she wished to be driven to the probate court. He drove away with the car and returned it to the Argyle-Clark Garage. She did not at any time give him permission to drive the automobile for his personal use. Early that evening Byrne came to the garage and took the car out. Around 8 o'clock the following morning, January 29, 1930, Lucille M. King, who was in the process of walking from the southeast corner of Diversey and Clark streets, Chicago, to board a northbound Clark street car which was standing at the intersection, was knocked down and severely injured by the Buick automobile driven by Byrne. Byrne, after striking the girl, proceeded in a northerly direction through the

red light, which was set to warn drivers not to cross Diversey boulevard while the same continued red. He was taken into custody by the police that morning while in an intoxicated condition. It is undisputed that at the time the injuries were inflicted, George Byrne was driving the car for his own personal use and was not engaged in carrying out any mission for Mrs. Allan. Lucille M. King brought an action for damages in the superior court of Cook county against George Byrne and Catherine Allan. On the trial a verdict was directed in favor of Mrs. Allan and the jury returned a verdict against George Byrne, assessing the damages at the sum of $7,500. Judgment was entered on the verdict in favor of Lucille M. King. Following a *nulla bona* return on the execution and an affidavit in garnishment against the Continental Casualty Company, as garnishee, the latter filed an answer. On issue joined the case was tried without a jury and the court found the issues against the defendant garnishee, and entered a judgment in the sum of $8,496. This appeal is prosecuted to reverse the latter judgment.

The first proposition for us to resolve is whether George Byrne was driving the automobile with the permission of Mrs. Allan within the meaning of the extended insurance clause. It is conceded by the defendant that the ''permission'' mentioned in the extended insurance clause may be an implied permission. The trial court decided the issues for Lucille M. King on the authority of three cases decided in the Appellate Court of this district, one by each of the three divisions. In the case of *Jackson for use of Schaer v. Bankers Indemnity Ins. Co.*, 277 Ill. App. 140, it appears that Richard E. Schaer recovered a judgment against Clark M. Jackson for $4,000 because of injuries sustained early on the morning of August 8, 1931, and occasioned by the negligent driving of an automobile by Jackson, which was owned at the time by Vincent C. Fischer. After return of the execution unsatisfied, a garnish-

ment proceeding was commenced against the insurance company, based upon an "omnibus clause," similar to the one in the instant case, and on the trial judgment was entered against the insurance company. Fischer was a commercial artist residing in Waukegan, Illinois. He also had an apartment at 636 Addison street, Chicago. Jackson also was an artist, having a studio at 43 East Ohio street, Chicago. During the early evening of Friday, August 7, 1931, Fischer and Jackson had a few drinks in the company of some of their friends. The party then went to Fischer's apartment. About midnight some of the guests expressed a desire to go to their respective homes, and with Fischer's permission, Jackson drove three of the guests to their homes in the automobile. Fischer had frequently before given Jackson permission to drive his car. Siegel, one of Fischer's guests, remained in the apartment, to which Jackson returned in the car at about 1:30 Saturday morning. Upon Siegel expressing a desire to be driven to his home in Berwyn, Illinois, Jackson, with Fischer's permission, agreed to do so. Fischer then stated that he felt "pretty tired," that he had to be in Lake Bluff that morning (Saturday morning) and that it would be all right with him if Jackson returned with the car in time to make his contemplated trip in the car to Lake Bluff. Fischer gave no instructions to Jackson as to the route he should take in going to or returning from Berwyn. Jackson drove Siegel in the car to Berwyn. On his return trip alone, and apparently because he was intoxicated, he was in a collision at 51st and Cottage Grove avenue, which collision was the basis for the claim for damages. The court discusses the various cases cited, including *Dickinson v. Maryland Casualty Co.*, 101 Conn. 369, and *Stovall v. New York Indemnity Co.*, 157 Tenn. 301, and on the authority of those cases, decided that the trial court's decision that the car was being operated with Fischer's

permission, was not against the manifest weight of the evidence. Therefore, the judgment was affirmed.

In *Karton v. New Amsterdam Casualty Co.*, 280 Ill. App. 201, involving a similar clause in a policy covering a car owned by Clara J. Shepard, the evidence established that Robert Weiss, a police officer, called on Mrs. Shepard at her home at about 12:30 in the morning; that he lived four or five blocks from her home; that she told him he could take the car to go to his home and bring it back the next morning. He drove away in the car, did not go to his home but drove around Chicago, got drunk, and at about 5:30 in the morning was driving the car about five miles from Mrs. Shepard's home at a high rate of speed, shooting his revolver out of the car, ran into a truck belonging to the Railway Express Company, demolished the truck and automobile, and was killed. The express company recovered judgment against the administrator of his estate. The insurance company refused to pay the judgment and the administrator sued the insurance company on the policy. The express company intervened and was made coplaintiff. Afterward the administrator of Weiss's estate was dismissed out of the case. There was a trial before the court and a finding and judgment in favor of the express company and against the insurance company. The court followed the ruling in the *Stovall* case and affirmed the judgment.

In *Jefson for use of Alber v. London Guarantee & Accident Co.*, 293 Ill. App. 97, judgment was entered in favor of Marvin Jefson for use of Elaine Alber, administratrix of the estate of Walter Alber, deceased, and against the garnishee, London Guarantee and Accident Company, in the sum of $10,457.66. The cause was tried before the court without a jury. That cause also involved an omnibus clause, similar to the one in the case at bar. Jefson, on August 11, 1934, was in the employ of Mrs. Jackson as a chauffeur and houseman.

About 6 o'clock in the evening he asked her for permission to take the Chrysler coupe to go and have a haircut in Lake Forest. Mrs. Jackson lived on her estate on Waukegan road in Lake Forest. He said he would take only a half hour. She told him if he would be back in a half hour, he could take the car. He took the car ostensibly to go to the barber shop, but instead he drove to his sister's home in the village of Half Day and then into Chicago. While driving from Chicago northwest on Milwaukee avenue and while in the village of Wheeling, the car that he was driving collided with a motorcycle and another automobile, causing the death of plaintiff's intestate. He was then on his way to visit his sister at Half Day. The court, in affirming the judgment, at p. 102, said:

"The first question confronting us is: Was Jefson made another assured by the permission given by Mrs. Jackson for him to use the automobile? We think from the facts stipulated there can be no doubt that immediately upon the permission being given, *Jefson was an additional assured* in accordance with section 9 of the insurance policy.

"That brings us to another question: Could a limitation be placed upon that permission by the statement of Mrs. Jackson, that if he could get his haircut in a half hour he could take the automobile, when there is no such limitation as to permission expressed in the language used in the policy?"

In *Dickinson v. Maryland Casualty Co.*, 101 Conn. 369, 377, the court said:

"Let us see how the law construes a provision of a contract of insurance which invites two constructions. Richard on Insurance (3d Ed.) § 90, thus states the accepted rule: 'The contract of insurance being a unilateral contract framed mainly in the interest of insurers, and the insured being compelled to accept the form offered, in order to secure insurance, any ambiguity as

to the purpose or meaning of its terms, or what property was intended to be covered, will be construed in favor of the insured.' ''

The insurance company invites our attention to the case of *People v. Luster,* 292 Ill. App. 244. The defendant was prosecuted by information in the municipal court of Chicago on a charge of operating a motor vehicle without the consent of the owner, J. G. Lucas, in violation of section 36, ch. 95½, Ill. Rev. Stat. 1937 [Jones Ill. Stats. Ann. 85.036]. The cause was submitted to the court without a jury and a finding of guilty was entered. The court entered judgment on the finding and an appeal followed. Defendant was employed by Mr. Lucas as his chauffeur. The car was kept in a public garage. After driving Mrs. Lucas to the office of an optician and then taking her to her home, the owner told defendant to take the car to the garage. The defendant took the car out of the garage without the permission of the owner and was arrested while driving the car at 3:30 in the morning. One of the contentions of the defendant was that the provisions of the statute were not applicable to a private chauffeur, because his employment by the owner constituted the grant of a continuing consent to drive the automobile upon the streets. He argues that the termination of the day's work did not operate as a withdrawal by the owner of his right to operate or drive the vehicle, irrespective of whether that might mean the absence of permission to use the car upon an errand connected with the chauffeur's own business or pleasure. The court said, p. 251: ''The mere fact that a person employs a chauffeur to drive his automobile does not mean that the employer parts with the possession of his property, nor does it mean that he forfeits his right and power to control and regulate the use of his own automobile. He is, notwithstanding such contract, the absolute owner and possessor of the

automobile. The possession is his and not that of his servant or chauffeur. The chauffeur, by virtue of his employment, has the custody of the automobile as distinguished from its possession, but he has the care and charge of it merely for the owner, who still has the right to control it. If the owner is present and witnesses the chauffeur driving the automobile, then, of course, the consent of the owner in the absence of objection by him would be implied. If the owner is not present the chauffeur may drive the vehicle for such time, in such manner and to such places only as he may have permission, express or implied, from the owner to drive it. Otherwise the chauffeur would have absolute and complete control of the automobile, although it was the property of another, and could use or drive it as he saw fit, irrespective of the wishes of its owner. If defendant's theory is correct, the chauffeur could drive the automobile either in the State or out of it, and irrespective of the wishes of the owner, his employer. We do not so understand the law. While for the time being the chauffeur may have the automobile in his custody and control, the property therein is with the owner, and the legal possession remains in the owner. The chauffeur using the automobile and driving it contrary to the directions of the owner may be guilty of trespass or even of conversion. This is the act which the statute declares to be a misdemeanor. In this case the evidence shows without contradiction that the informant was the owner of the automobile, that in his absence the defendant without his consent drove the same on the streets and highways of his State. Not only was the driving done without permission of the owner but contrary to his express directions.''

The insurance company urges that the facts in the case at bar and the facts in the three cases heretofore decided by this court, warrant different conclusions in the application of the provisions of the policy, and

points out that in each of the previous cases the person driving the car at the time of the accident had permission to drive the car. Defendant insists that in the instant case the chauffeur did not have permission to drive the car for his own personal use, and asserts that two cases decided by the Supreme Court of Wisconsin aptly illustrate the distinction.

In *Drewek v. Milwaukee Automobile Ins. Co.,* 207 Wis. 445, 240 N. W. 881, it appears that the administratrix of the estate of Constantine Drewek, deceased, recovered a judgment against Max Kopczynski for his negligent operation of a truck in such a manner as to cause the death of Constantine Drewek, who was riding in the truck. The truck belonged to Kopczynski's employer, Jahnke Bros., grocers, and was covered by a policy of insurance with an omnibus clause. Kopczynski had obtained permission from his employer to use the truck after working hours by falsely stating that he desired to use the truck to haul a phonograph for himself in exchange for a radio, when in fact Kopczynski used the truck after regular working hours to haul furniture at the request of his friend Drewek for a friend of the latter, and for performing such service the friend gave Kopczynski a dollar. The employer did not know he was using the truck for another purpose. The court followed the holding of the Tennessee court in the *Stovall* case to the effect that under the policy the chauffeur was operating the truck with the permission of the employer. However, it reversed the cause on another ground.

The case which defendant contends illustrates the proposition involved in the case at bar is that of *Brochu v. Taylor,* 223 Wis. 90, 269 N. W. 711. This case involved the liability of an insurance company under a clause similar to the one we have been discussing. It appears that Lester LaTourneau was employed by Arthur H. Rand as a chauffeur and handyman at his

summer home near Brule, Wisconsin. On a Saturday evening the Rands entertained a number of guests at dinner. The guests departed and at that time La-Tourneau was still on duty. He banked the fire and assisted in closing up the cabin for the night. He then proceeded to his cabin, where he remained about 10 minutes. He then, in company with Erma Taylor, who was employed as a maid at the same summer home, got into the Buick sedan and drove to Brule, where he stopped in front of a tavern. While he was in the tavern, Erma Taylor moved over into the driver's seat. LaTourneau and the tavern keeper came out of the tavern and got in the rear seat of the car. Miss Taylor started the car and drove toward Iron River. After proceeding about 3½ miles, the sedan collided with the rear end of an automobile which was moving in the same direction. The jury found that at the time of the collision Erma Taylor was not driving the automobile with the permission of Mr. Rand or with the permission of an adult member of the family. That finding of the jury was not questioned in the appeal. The jury found that LaTourneau was using the Rand automobile at the time of the collision with the permission of Mr. Rand or the permission of an adult member of his family. There was no evidence of any express permission. The sedan was used on the night in question without the knowledge of either Mr. or Mrs. Rand. Plaintiffs contended that the evidence established the inference that LaTourneau had implied permission to use the sedan for his own purpose. The court stated that the question to be decided was whether there was any evidence in the record reasonably permitting the inference that LaTourneau was using the sedan at the time of the collision with the implied permission of Mr. Rand. There was evidence that LaTourneau was seen frequently in Brule with the automobile, and was seen in taverns several times late at night, and on such

occasions he was driving one of the Rand automobiles. The court held that such evidence did not prove that LaTourneau was using a car for his own purpose with the permission of Mr. Rand. The court further said that in order to support an inference that one has the implied permission to use an automobile belonging to another, for his own pleasure and purposes, there must be evidence tending to show a course of conduct or practice known to the owner and acquiesced in by him, or by someone having authority to give permission.

It is interesting to note that in the *Stovall* case (157 Tenn. 301), the court, at p. 314, said:

"It is our opinion that the words 'providing such use or operation is with the permission of the named assured' were intended to exclude from the protection of the policy a person who should take the automobile and use it without permission or authority in the first instance. If, however, the automobile covered by the policy is delivered to another for use with the permission of the owner or insured, his subsequent use of it is with the permission of the insured, within the meaning of the policy, regardless of whether the automobile is driven to a place or for a purpose not within the contemplation of the insured when he parted with possession."

The chauffeur was driving the car without the permission of Mrs. Allan. In accordance with the instructions that she had given to him, he had taken the car to the garage. If he did not receive further instructions from her, he was to have the car in front of her home at 11 o'clock the following morning. In violation of these instructions, he returned to the garage early in the evening and took the car out for his own personal use. We would be doing violence to the language used in the insurance policy were we to hold that such conduct on the part of the chauffeur constituted permission from Mrs. Allan to use the car. Had he been

prosecuted for driving the automobile without the consent of the owner, in all likelihood a conviction would have resulted. In the case of *People v. Luster, supra,* where a chauffeur was convicted, he was likewise driving the car on some personal business without the consent of the owner. If at that time Luster had, through the negligent operation of the car that he was driving, injured some person, no one would contend that the person injured, on recovering a judgment against Luster, could successfully maintain a garnishment action against an insurance company on a policy such as the one before us. To so hold would be the equivalent of saying that while he was guilty of the offense of driving a car without the consent of the owner, nevertheless the insurance company was liable under the policy because he was driving the car with the permission of the owner. We are satisfied that the case at bar is clearly distinguishable from the three cases decided by the three divisions of this district. Clearly, Byrne was not using the car with the permission of Mrs. Allan.

Another clause of the policy provides that ''This policy shall constitute the entire contract between the Company and the Assured. . . . But in the event of the death, insolvency or bankruptcy of the Assured within the policy period, said policy for the unexpired portion of such period shall except in the event of cancellation cover the legal representative of the Assured; provided that notice in writing is given to the Company within thirty days after the date of such death, insolvency or bankruptcy.'' A further contention of defendant is that Byrne was not operating the automobile with the permission of an adult member of the assured's household, for the reason that when the assured named in the policy died, his household ended. The defendant also urges that in view of the fact that letters testamentary had not been granted to Mrs.

Allan at the time of the accident, she had no power or authority to grant permission to George Byrne to operate the automobile for his personal use. Defendant finally contends that there was a failure on the part of Byrne to co-operate with the defendant. However, having resolved the cause by deciding that Mrs. Allan had not given permission to her chauffeur to use the car, it is unnecessary to extend this opinion by considering the latter point.

For the reasons stated, the judgment of the superior court of Cook county is reversed and judgment entered here for the defendant and against the beneficial plaintiff, Lucille M. King.

*Judgment reversed.*

HEBEL, J., concurs.
DENIS E. SULLIVAN, P. J., dissents.