**CONTINENTAL CASUALTY COMPANY, Plaintiff,**

**v.**

**Gennie PADGETT, as Administratrix of the Estate of Felix Padgett, Jr., deceased, William Pope Cook, as Administrator of the Estate of William Taylor, deceased, and Gilbert Harrelson, Defendants.**

**Civ. 3970.**

United States District Court
E. D. South Carolina,
Columbia Division.

Sept. 11, 1954.

Nelson, Mullins & Grier, Columbia, S. C., for plaintiff.

Brown, Jefferies & Mazursky, Barnwell, S. C., R. K. Wise, A. Birge Wise, Jr., Edwin H. Cooper, M. Boyd Neeley, Columbia, S. C., for defendants.

WYCHE, District Judge (sitting by designation).

On September 1, 1954, an Order was filed overruling the plaintiff's motion for judgment notwithstanding the verdict. This opinion is filed to set forth the reasons for that Order.

This is an action for a declaratory judgment, in which the plaintiff insurer seeks a determination that one Taylor, who was driving a truck of its insured, Boineau's, Inc., at the time of a collision between it and a Greyhound bus, was not using the truck at that time with the permission of the insured within the meaning of the "omnibus coverage" clause in the policy issued thereon by the plaintiff.

At the trial on June 17, 1954, the plaintiff moved for a directed verdict in its favor, which motion was refused, and the jury returned a verdict adverse to the plaintiff's contention. The plaintiff has moved for judgment notwithstanding the verdict.

The complaint in the action alleges that the plaintiff issued its policy of insurance No. CCA–5183510 on May 14, 1952, insuring Boineau's, Inc., of Columbia, S. C., for a period of one year against loss from liability imposed by law incident to the maintenance or use of any of the automobiles described in the policy. The policy contained, among other provisions, the following: "The unqualified word 'insured' includes the named insured and also includes any person while using an owned automobile or a hired automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured, or with his permission."

The complaint also alleges and the evidence showed that the International Truck in question, which was described in the policy, was involved in a collision with a Greyhound bus while being used by William Taylor, an employee of Boineau's, Inc., at about 2:35 a. m., on Sunday morning, March 15, 1953, while he was returning to Columbia from a pleasure trip. In the collision Taylor and all of the passengers riding with him were killed, and the defendant Gilbert Harrelson, the driver of the Greyhound bus was seriously injured. The other defendants are the administrator of Taylor and the administrator of Felix Padgett, Jr., who was riding with Taylor in the truck.

It is alleged that Taylor, late in the afternoon or on the night of Saturday, March 14, 1953, after Boineau's, Inc., had closed its place of business for the weekend, took the truck that had been parked at its place of business without its knowledge, permission or consent.

While admitting its obligation to defend any claim or suit against its insured Boineau's, Inc., growing out of the collision, the plaintiff says that an actual controversy exists between it and the defendants as to whether the estate of Taylor is covered by the provision of the policy above quoted, and asks that the Court declare that such coverage is not afforded thereby.

From the evidence it appeared that the truck involved in the accident was normally in the charge of William Frierson, another employee of the insured, over weekends. On the weekend in question Frierson wanted to go out of town, and, it being Taylor's turn to get the dunnage or scrap wood left over from the packing of shipments on the insured's trucks, Charles Boineau, an officer of the

insured, gave Taylor permission to use the truck after twelve o'clock noon, the closing time on Saturday, to take the dunnage to his mother's house, after which he was to park the truck, retaining the keys, pick the men up at 7:30 o'clock Monday morning, as Frierson usually did, and bring them to work in the truck. Boineau testified that he asked Taylor "Do you want to park that truck in front of your house?"; that Taylor said, "No, sir, I would have to feed the parking meters all weekend"; and that Taylor then said "I will take it to Gervais Street and leave it there and pick the men up at 7:30 Monday morning." Boineau also testified that he "didn't indicate any deadline on his delivering the wood because he said he would deliver it right then and take the truck back." Boineau stated that while Taylor had driven the truck on business "to pick up packers or deliver packers," he had never given him permission to use the truck for his own pleasure, or "on the weekend or after business".

Several employees of the insured testified that they saw the truck parked on Gervais Street that Saturday afternoon, as did a witness who worked for Evans Motor Company and services the truck most of the time.

The only witness called by the defendants was the defendant Gennie Padgett, the mother and administrator of Felix Padgett, Jr., who testified that she had seen Taylor driving the same truck the preceding Saturday about 6:00 o'clock in the afternoon coming down Gadsden and going up Hampton Street in Columbia, and that Taylor was alone at the time.

The truck in question was included in the liability policy carried by Boineau's, Inc., under the South Carolina statutes and the regulations of the Public Service Commission on the fleet of its trucks used to carry cargo for hire. The witness Boineau stated on cross-examination: "Q. You took this policy out to protect the public and protect you from liability against the public? A. Yes,

sir. Q. In the case of any accident? A. Yes, sir."

William Frierson, the employee normally in charge of the truck over weekends, whose function in this regard was delegated to Taylor by Boineau on the weekend in question, was not called as a witness by the plaintiff, and Boineau did not testify as to what limitations, if any, were placed upon Frierson's use of the truck while in his possession over weekends.

In its motions for a directed verdict and for judgment notwithstanding the verdict, the plaintiff takes the position that the only reasonable inference to be drawn from the testimony is that Taylor did not have implied permission to drive the truck at the time of the accident; that the uncontradicted evidence shows that Taylor was operating the truck at the time and place in question without the knowledge, consent, or implied permission of the insured; that Taylor was given permission for the expressed purpose of carrying lumber to his mother's home, under instructions to bring the truck immediately back to the parking place on Gervais Street, which he did; that sometime thereafter, having the key, he took the truck and went on a pleasure jaunt without permission to take the truck on that occasion, and while returning had the accident in question.

The jury was instructed in substance that the policy provision under consideration excludes from its protection a person who takes an insured vehicle and uses it without permission, express or implied, in the first instance, and that under the evidence Taylor did not have express permission to use the truck at the time of the accident.

The jury was further instructed that the burden was upon the plaintiff to prove that Taylor did not have implied permission at that time, and in this connection that the words of the provision of the policy under consideration cover a person making use of the vehicle for purposes of his own if it was delivered to him for use with the permission of the

owner, although the vehicle may be driven to a place or for a purpose not within the contemplation of the owner when he parted with its possession, express permission for a given purpose being implied permission for all purposes.

The instructions given to the jury followed the so-called liberal rule of interpretation of omnibus clauses under such situations as that presented in the instant case. There appear to be two views in the decided cases of the application of such clauses where an employee has an accident while driving his employer's vehicle for a purpose or at a place not contemplated when he was given possession of the vehicle.

According to the strict rule of interpretation, the use of the vehicle at the time of the accident must be one contemplated when permission was given to the employee. In other words, the time at which the bailment was to expire must not have passed; the place at which the vehicle is used must be one either specified or contemplated by the parties; and the use made of the vehicle at the time of the accident must be one either contemplated or specified. 5 A.L.R.2d, note 626, and cases cited.

According to the so-called liberal rule, the bailee need only to have received permission to take the vehicle in the first instance, and any use while it remains in his possession is with permission though that use is for a purpose not contemplated by the employer when he parted with possession of the vehicle. In other words, if the original taking was with the insured's consent, every act subsequent thereto while the employee is driving the car is held to be with the insured's permission in order to permit a recovery under the omnibus clause, the only essential thing being that permission be given for use in the first instance. 5 A.L.R.2d, note 629, and cases cited.

It has been said that, under the rationale of the latter rule of interpretation, even an ordinary automobile liability insurance contract is as much for the benefit of members of the public as for the benefit of the named or addi-tional insured, and therefore upon an injury occurring it would be undesirable to permit litigation as to the use made of the automobile, the scope of permission given, the purposes of the bailment, and the like. 5 A.L.R.2d, note 629–630.

The interpretation and legal effect of the policy here involved is to be determined in the light of the applicable South Carolina statutes and decisions. Chatfield v. Farm Bureau Mut. Auto. Ins. Co., 4 Cir., 208 F.2d 250, 253. As was true in the Chatfield case, no decision of the Supreme Court of the State dealing with the construction of the policy provision under consideration has been cited or found. Hence the Court is required to construe the policy provision and adjudicate the rights of the parties thereunder "with the aid of such light as was afforded by the materials for decision at hand, and in accordance with the applicable principles for determining state law." Meredith v. City of Winter Haven, 320 U.S. 228, 64 S.Ct. 7, 11, 12, 88 L.Ed. 9; Chatfield v. Farm Bureau Mut. Auto. Ins. Co., supra; Ezell v. Rust Engineering Co., D.C.W.D. S.C., 75 F.Supp. 980, 984.

The rule of construction of insurance policies applied by the Supreme Court of South Carolina has recently been stated by that Court as follows: "Where the language of an insurance contract may be understood in more senses than one, or where it is doubtful whether the given words were used in an enlarged or restricted sense, other things being equal, that construction should be adopted which is most beneficial to the insured and construed most strongly against the insurer." Eaves v. Progressive Fire Ins. Co., 217 S.C. 365, 60 S.E.2d 687, 688, and cases cited.

The substantial number of decisions which have followed and applied each of these rules in other jurisdictions in situations similar to that in the instant case clearly demonstrate that the language of the omnibus clause under consideration "may be understood in more senses than one," and that the question is presented

"whether the given words were used in an enlarged or restricted sense."

■ Accordingly, it is my opinion that the so-called liberal rule of interpretation must be held to prevail in South Carolina, and that the jury was correctly instructed that Taylor was covered by the policy of Boineau's, Inc., if the truck was delivered to him for use with the permission of Boineau's, Inc., although the vehicle was driven to a place or for a purpose not within the contemplation of the owner when he was given possession of the truck, express permission for a given purpose being implied permission for all purposes.

This conclusion is consistent with the public policy of the State of South Carolina as reflected in its relevant statutes, and is strengthened thereby. As early as 1912, 27 St. at Large, p. 737, the South Carolina motor vehicle lien law was enacted, which created a lien on a motor vehicle "next in priority to the lien for State and county taxes" in favor of any person receiving personal injury or property damage by reason of its operation in violation of law or negligently and carelessly, the act being effective unless "the motor vehicle [shall have been] stolen by the breaking of a building under a secure lock or when the vehicle is securely locked." S.C.Code of Laws 1952, Section 45–551; Merchants & Planters Bank v. Brigman, 106 S.C. 362, 91 S.E. 332, L.R.A.1917E, 925. In 1925, 34 St. at Large, p. 255, the requirement was enacted that motor carriers procure and file with the Public Service Commission liability insurance on motor vehicles used in their service "insuring or indemnifying * * * the public receiving personal injury by reason of any act of negligence". S.C.Code of Laws 1952, Section 58–1481; Ott v. American Fidelity & Casualty Co., 161 S.C. 314, 159 S.E. 635, 76 A.L.R. 4. This was the statute under which the insured procured the policy in question. And in 1952, there was enacted the South Carolina motor vehicle safety responsibility act, 47 St. at Large, p. 1853, § 46–701 et seq., whereunder in case of a motor vehicle accident the operator and the owner of a motor vehicle causing injury or damage is required to deposit security sufficient to satisfy any judgment for damages resulting from the accident unless covered by a liability insurance policy or bond covering the same, or unless, in the case of the owner, the vehicle was being operated without his permission, express or implied.

■ There is no dispute that Taylor was given possession of the truck with permission to use it to take his lumber to his mother's home. There is also no dispute that he was to retain the keys of the truck and pick up the men and take them to work at 7:30 o'clock on Monday morning. Under Boineau's testimony, it was for the jury to say whether Taylor was required to park the truck on Gervais Street, so that such parking constituted an end of his possession under the original permission, or whether he had the option to park it at his house or on Gervais Street while he had charge of it over the weekend, so that the parking of the truck on Gervais Street after he had delivered the lumber, if it was so parked, was for his own convenience in keeping the truck and not a return of possession to the owner. The jury did not have the benefit of evidence from either Frierson or Boineau as to how the truck was customarily handled or used over the weekend by the former. The credibility of the plaintiff's witnesses and the weight to be attached to their testimony was for the jury under the applicable principles. The burden was upon the plaintiff to establish the affirmative of the issue tendered by it, and the jury found that it had failed to sustain that burden.

Viewing the testimony in the light of the rule of interpretation held to be applicable in South Carolina, it cannot be held that the plaintiff was entitled to a directed verdict in its favor, and the adverse finding of the jury was warranted under the evidence adduced. Hence, the plaintiff's motion for judgment notwithstanding the verdict must be overruled, and

It is so ordered.