A95A1378. PRUDENTIAL PROPERTY & CASUALTY INSURANCE COMPANY v. WALKER et al.
(464 SE2d 230)

ANDREWS, Judge,

The central issue before us on appeal is whether the trial court erred in denying Prudential's motion for directed verdict. Prudential contends there was no evidence from which the jury could find that Ms. Segal had either express or implied permission to drive James Therrell's car. We agree and reverse.

James Therrell III had temporarily loaned his son James Therrell IV ("Jimmy") his Ford Escort so that Jimmy could transport his belongings from his home in Roswell to college at Georgia Southern University in Statesboro. Jimmy borrowed the car because he could not get everything he needed to take back into his own car. He was to take the car back to school and return with it a few weeks later on Easter weekend.

Although Jimmy knew he was not supposed to loan the car to

anyone, he allowed Faith Segal to take the car and drive to Tallahassee, Florida, to be fitted for a bridesmaid's dress. On the way to Tallahassee, Segal was involved in an accident with the Walkers.

Prudential brought this declaratory judgment action, contending that Segal was not a covered driver under Therrell's automobile policy. The case was tried to a jury which answered a special interrogatory finding that Segal did have permission to use the car at the time of the accident. Prudential appeals, claiming that it should not be obligated to defend Segal or pay on any judgment awarded to the Walkers against her.

1. First, Prudential claims that the trial court erred in denying its motion for directed verdict because the evidence shows that Segal was not a "permissive driver" under the terms of Therrell's insurance policy. The pertinent policy provision is as follows: "You and a resident relative are insured . . . other people are insured while using your car . . . if you give them permission to use it. They must use the car in the way you intended." The policy defines "you" and "your" to be the named insured, i.e., Therrell and his wife.

The "second permittee" doctrine provides that when a third person uses a car via another person who did have permission to use the car, this is a permissive use under the insurance policy as long as "the use falls within the scope of the permission." (Citations omitted.) *Allstate Ins. Co. v. Wood*, 211 Ga. App. 662, 663 (440 SE2d 78) (1994). To determine whether the use falls within the scope of the permission, the test is: (1) whether the owner's permission to the first permittee included the use to which the third person put the car, and (2) whether the scope of the permission the third person received from the first permittee exceeded the scope of permission given the first permittee by the owner.

Applying this test to our facts, it becomes apparent that Segal's use of the car far exceeded the permission given by Therrell to his son. Because there was not room in Jimmy's car for everything Jimmy wished to take back to school, Therrell allowed him to take his car to Statesboro. Jimmy was given permission only to travel to Statesboro and back to Roswell. He was not to loan the car to anybody, and he was expressly instructed not to go to Florida, Savannah, or anywhere else. Ms. Segal's use of the car to go to Florida to be fitted for a bridesmaid's dress falls nowhere within the parameters of this permitted use.

The applicable case law supports this conclusion. In *Ga. Farm Bureau Mut. Ins. Co. v. Allstate Ins. Co.*, 190 Ga. App. 593 (1) (379 SE2d 619) (1989), a mother lent her car to her son's girl friend so that the girl friend could take the son back and forth to work and "get groceries and stuff." Id. at 594. The mother claimed she never gave her son permission to drive the car. When the son had an accident

while driving the car to town to get a TV antenna, we found that this came under the generic use for which the owner had loaned the car, i.e., for the son's benefit in going to work and running errands. Id. The facts in *Transp. Ins. Co. v. Allstate Ins. Co.*, 208 Ga. App. 837 (432 SE2d 259) (1993) are similar. Gwendolyn Flitter's company gave her a company car for business and personal use. A visiting friend of Flitter's had an accident while driving this car to the grocery store to buy groceries for a dinner party Flitter was giving. We held that the use of the vehicle was within the scope of permission given to the employee since the friend was running a personal errand for the employee's benefit. Id. at 840.

Here, Segal's use of the car bore no relation to the purpose for which Jimmy borrowed it. He needed it to transport his belongings back to school. Jimmy was to use the car while at school and was not to take it anywhere else except back to Roswell. Accordingly, Ms. Segal's use of the car to go to Florida to be fitted for a bridesmaid's dress was not included within the use for which Therrell allowed Jimmy to take the car and also exceeded the scope of permission given by Therrell to Jimmy for the car's use. Therefore, we find that Ms. Segal did not have James Therrell's express or implied consent to drive his car to Florida. Accordingly, the trial court erred in denying Prudential's motion for directed verdict.

2. Because of our holding in the first division, we need not address the remaining enumerations of error.

*Judgment reversed. Birdsong, P. J., Pope, P. J., Johnson, Smith and Ruffin, JJ., concur. Beasley, C. J., McMurray, P. J., and Blackburn, J., dissent.*

McMurray, Presiding Judge, dissenting.

I respectfully dissent from the judgment of reversal as it is my view that the jury was authorized to conclude that the owner of the vehicle gave a *general* permission to use his car over a two- or three-week period and that any prohibition on going to Florida was intended solely to get the owner's son (as well as the car) home from college for the Easter holiday. It is undisputed that the driver had no reason to know of any restrictions placed on the car's use by the owner. Consequently, the second permittee doctrine renders the owner's express restriction nugatory.

Faith Joy Segal was operating a Ford Escort owned by James Therrell III when she was involved in a vehicular mishap with Alan A. Walker and Nicole G. Walker. Prudential Property & Casualty Insurance Company ("Prudential") brought this declaratory judgment action, contending Faith Joy Segal was not a covered driver under the terms of an automobile liability insurance policy Prudential issued to James Therrell III.

James Therrell III had temporarily loaned the Escort to his son, James Therrell IV, in order to move some of James Therrell IV's belongings from the family home in Roswell, Georgia, to Statesboro, Georgia, where James Therrell IV was attending Georgia Southern University. James Therrell IV has his own vehicle but "he couldn't get . . . all [his things] in there, so he said, 'Can I borrow the Escort?'" James Therrell IV was supposed to "bring the car back to [James Therrell III] in Roswell . . . Easter weekend." Thus, James Therrell IV would have the car "two or three weeks." James Therrell IV was also given two gasoline credit cards and a Discover charge card. On Friday, April 9, 1993, in Statesboro, James Therrell IV met Faith Joy Segal, a friend's roommate. Faith Joy Segal "was crying, and her mother kept calling her and telling her how much she — she was terrible, you know, that she was not going to her brother's wedding." It seemed to James Therrell IV that "she had no other way to get there than somebody to let her use a car." After being assured that Faith Joy Segal would be covered by her mother's own automobile liability policy, James Therrell IV agreed to let Faith Joy Segal take his father's Escort for one day and drive to Tallahassee, Florida, so she could be fitted for a bridesmaid's dress. Faith Joy Segal gave James Therrell IV $100. This sum had been given to Faith Joy Segal by her mother to apply towards the cost of a round-trip bus ticket to Tallahassee from Statesboro. James Therrell IV insisted this money was only "given as a loan which I was going to pay back to her on Monday, but it was also used as collateral because she was taking my father's car."

James Therrell III had a longstanding household rule about loaning property: "The rule is that we — we don't loan the property out, because invariably when something happens, the only compensation given back is I'm sorry. . . ." He also told James Therrell IV "the car was not to go to Florida. It wasn't to go to Savannah. It was to come here [Statesboro] and get business taken care of or whatever he had to do here, and then bring it back to Roswell." James Therrell III was certain that he had discussed loaning the car with his son prior to this trip, because "any time that we — we had a situation like that with Jimmy [James Therrell IV] I think we always stressed the situation that, 'Jimmy, this is not to be loaned out.'" James Therrell III conceded, however, that when he gave James Therrell IV "permission to use the car, that [any fatherly] admonition[s] . . . about loaning the car and don't go to Savannah . . . were not conditions of his use. . . ." James Therrell IV knew of the family rule although in this particular instance, he did not "remember him saying, 'Do not let anybody borrow the car.'" "It was mainly on cars. Do not loan a car to anyone. . . . I don't remember him saying it at that point, but, . . . I knew that I was not supposed to loan anybody that car." James

Therrell IV told Faith Joy Segal "to be very careful because [his] father basically would kill me if he knew that she had borrowed the car." On Saturday evening, Faith Joy Segal telephoned and said, " 'Look, Jimmy, I'm really sorry. I'm in a hospital. I've wrecked your car. It's totaled.' "

The case was tried before a jury which answered a special interrogatory and found "that Faith Joy Segal *did* have permission to drive the Therrell vehicle at the time in question." Prudential appeals from the judgment declaring it is obliged "under its policy to provide a defense to Faith Joy Segal and to pay up to the policy limits any judgment or amounts . . . owed by [her] to Alan A. Walker and/or Nicole G. Walker."

The denial of Prudential's motion for directed verdict, on the issue of whether Ms. Segal was a permissive driver, is Prudential's first enumeration of error. The Prudential policy defined an "Insured" in the following language: "**You** and a **resident relative** are insured. . . . Other people are insured while using **your car** . . . if **you** give them permission to use it. They must use the **car** in the way **you** intended." The policy elsewhere defines "**you**" and "**your**" to be the named insured, i.e., James Therrell III or his spouse. Prudential argues that Faith Joy Segal was not a permissive driver under the express terms of the policy because she did not have the permission of James Therrell III or his spouse. This contention is without merit.

" 'The term "permission" is universally held to mean either express or implied permission.' *Hodges v. Ocean Acc. &c. Corp.*, 66 Ga. App. 431, 435 (18 SE2d 28)." *Hemphill v. Home Ins. Co.*, 121 Ga. App. 323, 330 (2), 332 (174 SE2d 251). This Court recently applied the "second permittee doctrine" to identical policy language as was employed by Prudential and held liability coverage was afforded despite the owner's express prohibition against consuming alcohol in the car, allowing others to consume alcohol in the car, or allowing others to drive the vehicle. " 'In essence, the permission to use . . . clause refers to the purpose for which the permission was given and not the [manner of] operation of the vehicle [or the identity of the driver]. Thus, where a third person utilizes a vehicle via another person who did have permission from the owner, the fact that such third person had neither express nor implied permission from the owner is irrelevant. So is the fact the third person had no license to drive or was expressly forbidden to drive by the owner. "(T)he policy only requires permission for the purpose to be served." (Cits.) As long as the [second permittee's] use falls within the scope of the [original] permission then it is permissive within the policy terminology.' In this case, the relevant inquiries therefore are: (1) whether [James Therrell III's] permission to the first permittee, [James Therrell IV], included using

the vehicle [to run errands with school friends]; and (2) if the scope of the permission [Faith Joy Segal, the second permittee] received from [James Therrell IV, the first permittee] exceeded the permission [James Therrell IV] had from [James Therrell III, the owner]." (Emphasis omitted.) *Allstate Ins. Co. v. Wood*, 211 Ga. App. 662, 663 (1) (440 SE2d 78), applying *Ga. Farm Bureau Mut. Ins. Co. v. Allstate Ins. Co.*, 190 Ga. App. 593 (1), 594 (379 SE2d 619). In the case sub judice, the undisputed fact that James Therrell III had never given Faith Joy Segal permission to use the vehicle does not address the relevant inquiry. The scope of James Therrell III's permission to James Therrell IV over the two or three weeks he would have the car was to get "business taken care of or whatever he had to do . . ." and be back in Roswell over Easter weekend. This was a general permission that did not preclude a helpful gesture on behalf of a school friend. Furthermore, while it is true that James Therrell III told James Therrell IV not to take the car to Florida or Savannah, he affirmed that the *purpose* of his territorial restrictions "had to do with getting [James Therrell IV] home at Easter and being with [his] mother at Easter break," because that was important to her. Accordingly, when James Therrell IV let Faith Joy Segal take the car to Florida on a weekend before the Easter weekend, the *purpose* of James Therrell III's travel restrictions was not defeated thereby, even though that trip to Florida was arguably in defiance of James Therrell III's express prohibition.[1] Since we cannot say as a matter of law that Faith Joy Segal exceeded the scope of James Therrell III's permission to his son, a jury question was presented as to the precise parameters of that scope of permission. See *Ga. Farm Bureau Mut. Ins. Co. v. Allstate Ins. Co.*, 190 Ga. App. 593 (1), 594, supra. Compare *DeWorken v. State Farm &c. Ins. Co.*, 151 Ga. App. 248 (259 SE2d 490). In *DeWorken*, "it was undisputed that both the son and the friend to whom the son loaned the [father's] vehicle knew that no one other than the son was allowed to drive the car. . . . [This Court] held that the friend was not an insured under [that] policy *because*[, unlike Prudential's policy in the case sub judice,] it 'required that an

---

[1] The majority erroneously asserts that Faith Joy Segal's use of the car "bore no relation to the purpose for which [James Therrell IV] borrowed [the car because he] needed it to transport his belongings back to school." (Majority, ante, p. 86). This analysis mistakenly focuses on the subjective intent of the borrower rather than the revealed intent of the lender. Moreover, this mistaken analysis is contradicted by the testimony of the father, James Therrell III, who gave permission to his son to use the car to "get business taken care of or *whatever he had to do.*" (Emphasis supplied.) For all intents and purposes, the father's car was intended by both parties to be a *substitute* for the son's vehicle, with the exception that James Therrell IV was not to take the car to Florida during the Easter break. Neither father nor son anticipated that the vehicle, once unloaded of the son's belongings, would sit parked by the side of the road, idle, empty, and unused, during the two or three weeks that James Therrell IV would remain in Statesboro before returning home for Easter.

additional insured both use *and* operate the vehicle with the permission of the named insured or his spouse.' [Cit.]'' (Emphasis in original.) *Transp. Ins. Co. v. Allstate Ins. Co.*, 208 Ga. App. 837, 839 (2), 840 (432 SE2d 259) (physical precedent). In the case sub judice, Prudential admits in its brief that Faith Joy "Segal was not aware of any restriction on James [Therrell IV's] use of his father's car." The absence of express permission from James Therrell III is not germane to the proper inquiry under the "second permittee doctrine." Consequently, the trial court did not err in denying Prudential's motion for directed verdict on the basis that Faith Joy Segal did not get permission personally from James Therrell III or his spouse. As my colleagues in the majority would nevertheless reverse that correct determination of the trial court, I respectfully dissent.

I am authorized to state that Chief Judge Beasley and Judge Blackburn join in this dissent.

DECIDED NOVEMBER 16, 1995 — ▬▬▬▬▬▬▬

*Karsman, Brooks & Calloway, Ralph K. Riddle*, for appellant.
*Barrow, Sims, Morrow & Lee, A. Mark Lee, Thompson, Fox, Chandler, Homans & Hicks, Catherine H. Hicks, J. Converse Bright*, for appellees.