[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 17, 2007
THOMAS K. KAHN
CLERK

No. 07-10844
Non-Argument Calendar

_____

D. C. Docket No. 06-00032-CV-RLV-4

TIFFANY HAMRICK,
CHRISTOPHER R. DAVENPORT,

Plaintiffs-Appellants,

versus

AMERICAN CASUALTY COMPANY OF READING,
PENNSYLVANIA,

Defendant-Appellee.

_____

Appeals from the United States District Court
for the Northern District of Georgia

_____

(August 17, 2007)

Before DUBINA, CARNES and KRAVITCH, Circuit Judges.

PER CURIAM:

Appellants Tiffany Hamrick and Christopher R. Davenport appeal the district court's order granting summary judgment to appellee American Casualty Company of Reading, PA ("American Casualty"). Hamrick and Davenport were injured in an automobile accident caused by Brandon Hays driving a truck insured by American Casualty. After appellants obtained judgments against Hays, appellants brought this action against American Casualty alleging that American Casualty insured Hays and was responsible for satisfying the outstanding judgments. The district court granted summary judgment to American Casualty because the court found that Hays was not covered by the insurance policy. We affirm.

## I. Background

On April 4, 2004, Hays drove across the centerline on a public road in Whitfield County, Georgia and crashed into an oncoming car driven by Hamrick. Both Hamrick and Davenport, who was a passenger in Hamrick's car, were severely injured in the accident.

The truck Hays was driving at the time of the accident was owned by Georgia Piping and Fire Protection, Inc. ("Georgia Piping"). Steve Massingill, Hays's stepfather, worked for Georgia Piping and used the truck for work. Massingill had permission to drive the truck to and from work, but was not allowed

2

to use the truck for personal business. Hays also worked for Georgia Piping on a seasonal basis but did not have permission to use the truck.

Shortly before the accident, Massingill had asked Hays to take a half-bag of concrete from their home and fill a pothole at the end of the street. Hays placed the concrete in the back of the Georgia Piping truck, got the key from the floorboard of the truck, and drove down the street towards the pothole. It is unclear from the record whether Hays filled the pothole before causing the accident. Nevertheless, soon after taking the truck from his driveway, Hays drove the truck down a nearby road and, while waving to a schoolmate, crashed into Hamrick and Davenport.

The parties dispute whether Massingill gave Hays permission to use the Georgia Piping truck to fill the pothole.[1] The district court found that it was unnecessary to determine whether Hays had Massingill's permission because the case could be decided based on the scope of permission granted by Georgia Piping to Massingill. The district court found that Georgia Piping did not give Massingill permission to use the truck for personal business and thus American Casualty's

_____

[1] Massingill claims that he did not give Hays permission and, rather, assumed that Hays would use his bike to take the half-bag of concrete to the pothole. According, however, to the state trooper who arrived at the scene of the accident, both Massingill and Hays admitted that Hays had Massingill's permission to use the truck even though Hays did not have a driver's license. But after Georgia Piping's owner, Philip Bennett, pressed charges, Hays pled guilty to the theft of the truck. Hays's testimony has been inconsistent; in contradictory affidavits, he first denied but later claimed that he had permission to drive the Georgia Piping truck in the course of company business.

3

insurance policy did not cover Hays.

## II. Standard of Review

We review the district court's grant of summary judgment de novo. Gibson v. RTC, 51 F.3d 1016, 1020 (11th Cir. 1995). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute is genuine only if a reasonable factfinder could return a verdict for the non-moving party given the evidence presented. Danskine v. Miami Dade Fire Dep't, 253 F.3d 1288, 1292-93 (11th Cir. 2001). If the non-moving party does not "make a sufficient showing on an essential element of her case with respect to which she has the burden of proof," then the court must enter summary judgment for the moving party. Id. at 1293 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986)). We view all evidence and make all factual inferences in the light most favorable to the non-moving party. Id.

## III. Discussion

Because this case is properly before us on the basis of diversity jurisdiction, we must follow Georgia law in interpreting the scope of the insurance policy.

4

Prova v. State Farm Mut. Auto. Ins. Co., 772 F.2d 817, 819-20 (11th Cir. 1985). As the district court accurately noted, the appropriate legal standard for this case is Georgia's "second permittee" doctrine. Prudential Property & Casualty Insur. Co. v. Walker, 219 Ga. App. 84, 464 S.E. 2d 230 (Ga. Ct. App. 1995). The second permittee doctrine "provides that when a third person uses a car via another person who did have permission to use the car, this is a permissive use under the insurance policy as long as 'the use falls withing the scope of the permission.'" Id. at 231 (quoting Allstate Ins. Co. v. Wood, 211 Ga. App. 662, 663, 440 S.E.2d 78, 80 (Ga. Ct. App. 1994)). Georgia uses a two-part test to determine whether the use falls within the scope of the permission: "(1) whether the owner's permission to the first permittee included the use to which the third person put the car, and (2) whether the scope of the permission the third person received from the first permittee exceeded the scope of permission given the first permittee by the owner." Id.

The issue on appeal is whether Hays was a permissive driver under the original scope of permission granted by Georgia Piping to Massingill. If Hays's use of the truck was not within the scope of permission granted to Massingill by Georgia Piping, it does not matter whether or not Massingill gave Hays permission to drive the truck because he would have lacked the authority to grant such permission.

The record in this case includes the following evidence regarding the scope of permission granted to Massingill with regard to his use of the company truck: (1) a1998 authorization form, (2) Phillip Bennet's testimony, and (3) Steven Massingill's testimony. Georgia Piping produced a document dated January 30, 1998 and signed by Massingill that set forth the responsibilities of fleet drivers. The document prohibits use of the assigned vehicle by anyone not authorized to drive the company's vehicles but does not specify who is authorized.[2]

Bennett, as owner of Georgia Piping, testified that his employees were not to use the company's vehicles for personal business and that he had verbally reminded his foremen, including Massingill, in meetings prior to the April 4, 2004 accident.[3] Bennett also testified that it was company policy that no worker under the age of twenty-one could drive company vehicles.

---

[2] Between January 30, 1998 and the April 4, 2004 accident, Massingill had left Georgia Piping and later returned. No other documents regarding his use of the company's vehicles before the accident were produced. Georgia Piping did produce a document dated April 17, 2004 that specifically prohibited the use of company vehicles for personal use, but this is not relevant to the scope of permission on April 4, 2004.

[3] Appellants argue that the district court erred by not discounting Bennett's testimony because of an alleged "suspicion of mendacity." Appellants cite Thomas v. Great Atl. & Pac. Tea Co., which noted that "when the circumstances are conducive to lying, [a] well-supported suspicion of mendacity may serve as a legitimate basis for the factfinder's reasonable inferences concerning the ultimate facts at issue." 233 F.3d 326, 331 (5th Cir. 2000). Here, appellants argue that Bennett's testimony warrants such suspicion because he testified that he was trying to "protect" himself by pressing charges against Hays. This conclusory allegation is not relevant here because nothing in the record supports appellants' allegations of mendacity with regard to Bennett's testimony.

Massingill, in his deposition, testified that he may have signed a written policy but did not read it. When asked if he remembered any verbal instructions regarding the use of the company truck, Massingill said no but then later recalled a time when another foreman was reprimanded for buying beer and carrying it in the truck. Other than that, Massingill testified that the limits on the use of the vehicle was an exercise of common sense.

Appellants argue that the evidence of Hays driving the truck before April 4, 2004 and Massingill using the truck for personal business is probative regarding the scope of permission granted by Georgia Piping. But for these practices to be evidence of tacit permission on the part of Georgia Piping, the appellants needed to show that Georgia Piping knew that Massingill used the truck for personal business or that Hays drove the truck. Appellants failed to produce any evidence of such knowledge.

Importantly, appellants neither allege nor show that Massingill had permission from Georgia Piping to use the truck for his personal business or that Georgia Piping authorized Hays to use the truck for any purpose. Because there is no actual dispute regarding the scope of permission granted to Massingill by Georgia Piping, we hold that the district court did not err in granting summary judgment to Georgia Piping. Hays was not an authorized user of the truck at the

7

time of the accident, and, regardless of whether Massingill gave Hays permission to use the truck, the personal use of the truck was outside of the scope of permission granted by Georgia Piping. Therefore, Hays was not covered by American Casualty's insurance policy under Georgia's "second permittee" doctrine.

## IV. Conclusion

For the foregoing reasons, we **AFFIRM** the district court's order.