[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-11713
Non-Argument Calendar
_____

D.C. Docket No. 1:17-cv-05541-WMR

NAUTILUS INSURANCE COMPANY,

Plaintiff-Appellant,

versus

CHRISTOPHER FLOR,
TAYONNA C. VOLINSKI,
DAISY DAVIS,
as guardian of Kevin Maull,
as next friend of Kevin Maull,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(February 11, 2020)

Before WILLIAM PRYOR, JILL PRYOR, and TJOFLAT, Circuit Judges.

PER CURIAM:

This case is about whether Nautilus Insurance Company has a duty to defend under an insurance policy issued to Christopher Flor.  For an insurer to be excused from its duty to defend its insured, the allegations in the underlying complaint must "unambiguously exclude coverage under the policy."  *HDI-Gerling Am. Ins. Co. v. Morrison Homes, Inc.*, 701 F.3d 662, 666 (11th Cir. 2012); *see also Penn-Am. Ins. Co. v. Disabled Am. Veterans, Inc.*, 490 S.E.2d 374, 376 (Ga. 1997).  "If the facts as alleged in the complaint even arguably bring the occurrence within the policy's coverage, the insurer has a duty to defend the action."  *Hoover v. Maxum Indem. Co.*, 730 S.E.2d 413, 418 (Ga. 2012).  Nautilus argues that the District Court erred in determining that it had a duty to defend named-insured Flor.  Specifically, Nautilus contends that it has no duty to defend because the alleged driver, Tayonna Volinski, is not an "insured" under the contract and because the facts as alleged are within the ambit of two exclusion provisions that bar coverage.  Because the facts as alleged in the underlying complaint *arguably* bring the occurrence within the policy's coverage, we affirm as to Nautilus's duty to defend Flor.

In determining that Nautilus has a duty to defend Flor, the District Court also s*ua sponte* granted summary judgment for Volinski, finding that Nautilus has a duty to defend Volinski.  We conclude that whether Nautilus has a duty to defend

2

Volinski rests on whether she is an "insured" within the meaning of the contract; our analysis is subject to ordinary principles of contract interpretation. Because we determine that genuine issues of material fact remain, we vacate the District Court's grant of summary judgment in favor of Volinski.

I.

This dispute arises from a car accident that occurred on November 23, 2016. Volinski was allegedly driving a 2001 GMC Jimmy on Interstate 85 with her boyfriend, Kevin Maull, as a passenger when she lost control of the vehicle. Both occupants were ejected and suffered serious injuries. Maull was left in a vegetative state and later died from his injuries. Volinski sustained a traumatic brain injury and has no recollection of the incident.

The 2001 GMC Jimmy (the "vehicle") was owned by Flor. Flor is the president and owner of Peachstate Auto Insurance Agency, Inc. Flor carried a primary, underlying insurance policy on the vehicle through Infinity Select Insurance Company. Flor also had an umbrella policy through Nautilus.

Maull's next of kin, Daisy Davis, sued Volinski, Flor, Peachstate, and others in Dekalb County State Court, asserting claims for negligence and negligent entrustment. Volinski answered and asserted a crossclaim against Flor for

3

negligent maintenance.  Infinity tendered its policy limit to resolve the claims against Flor.

Nautilus then filed this federal action against Flor, Volinski, and Davis, seeking a declaration of its coverage obligations under the policy.  Nautilus and Flor both moved for summary judgment.  The District Court granted summary judgment to Flor on Nautilus's duty to defend because it determined that he met the definition of "insured" under the policy and that no exclusion precluded a duty to defend.  Although Volinski had not moved for summary judgment, the Court determined that its resolution of Nautilus's duty to defend Flor also resolved whether Nautilus has a duty to defend Volinski and granted summary judgment in her favor.  The Court did not rule on Nautilus's duty to indemnify.  Nautilus now appeals.

## II.

We review the District Court's "disposition of cross-motions for summary judgment *de novo*, applying the same legal standards used by the district court, viewing the evidence and all factual inferences therefrom in the light most favorable to the non-movant, and resolving all reasonable doubts about the facts in favor of the non-moving party." *Am. Bankers Ins. Grp. v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005).  Summary judgment is proper if the evidence shows

4

"that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

## III.

The Nautilus policy states that Nautilus "shall defend any suit against the 'insured.'"  The policy defines "insured" as "you while using any automobile" and "[a]ny person using [a covered vehicle] with your permission." (internal quotations omitted).  The policy also includes two exclusions on coverage which Nautilus argues preclude any duty to defend.

First, exclusion 7 states that coverage is excluded for:

"Bodily injury", "property damage", or "personal injury" arising out of:
> a. "Business" pursuits of the "insured"; or
>
> b. Property at or from which a "business" is conducted by the "insured" and the damage is as a result of the "business."

Business is defined as "any activity performed for economic gain, including a trade, profession, or occupation, other than farming."

Second, exclusion 18 states that coverage is excluded for "[a]ny liability arising out of any 'automobile' provided by the employer of any 'insured', its replacement or substitute unless 'underlying insurance' provides coverage for the loss."  The Infinity policy is listed on the schedule of underlying insurance.

5

According to the underlying complaint filed in the state court action, Volinski "was operating the vehicle on behalf of" Peachstate and Flor at the time of the incident. The vehicle was wrapped with Peachstate's logo for the alleged purpose of "promoting the business of" Peachstate. It was often parked at the Peachstate Tucker branch. After Volinski began working at the Peachstate Tucker branch in the summer of 2016, she found that she did not have reliable transportation to and from work and asked Flor if she could use the vehicle. The complaint alleges that Volinski was a permissive user of the vehicle.

The parties agree that Flor gave Volinski permission to use the vehicle but disagree over the scope of that permission. Nautilus alleges that Volinski's permission to use the vehicle was limited to commuting to and from work. Volinski claims that there were no limitations on her use of the vehicle.

In her deposition, Volinski testified that she called Flor and explained that she was having trouble finding transportation to work and asked if she could use the vehicle. She called Flor on the advice of her co-workers after they said that others had used the vehicle before and recommended that she ask Flor if she could use the vehicle. Volinski testified that she did not specifically ask Flor for permission to drive the vehicle beyond commuting. She further testified that Flor did not place any such restrictions on her use of the vehicle.

6

Flor testified that Volinski called him to ask if she could occasionally borrow the car because she was having trouble getting to and from work. He claimed that he said it was okay for her to use the car "to and from work only." Flor testified that he learned she was using the vehicle more than just on the occasional instances when she could not find a ride to or from work. He "believe[d]" he had a second conversation with Volinksi in which he reiterated that the vehicle was to be used for commuting "to and from work." He could not recall when the second conversation took place and did not document the conversation. He testified that he was not aware that Volinski was using the vehicle for more than commuting purposes after the purported second conversation. He also stated that, hypothetically, had he learned that she was using the vehicle for more than commuting to and from work after the second conversation, he would have cancelled his permission. He did not know where she was living or how long her commute took. When asked why he allowed her to use the car, he stated that he was "doing it to help her out" rather than to promote the company.

Both Flor and Volinksi testified that another employee in the branch, Joscelyn Reyes, had used the vehicle. Volinski testified that a different employee had also used the vehicle to go get lunch, as the keys were left in the back office of the Peachstate office. Flor testified that he was not aware of employees using the vehicle to run errands.

7

Approximately three weeks after Flor gave Volinski permission to use the vehicle, she complained to Flor's father (who is also a Peachstate employee) that something seemed to be wrong with the brakes in the vehicle.  Flor's father, Bob Flor, took the vehicle to a mechanic on October 27, 2016 and then returned the vehicle to Volinski.

The parties agree that at the time of the incident the vehicle was being used to transport Volinski and Maull from their shared residence to Maull's place of employment.[1]  Volinski testified that she would use the vehicle for "miscellaneous" activities beyond commuting to and from the Peachstate office, such as going to the store.  She also testified that she had used the vehicle to take Maull to work on one or two prior occasions.

IV.

It is a well-settled principle of Georgia law that the duty to defend and the duty to indemnify are different obligations.  *S. Tr. Ins. Co. v. Mountain Express Oil Co.*, 828 S.E.2d 455, 458 (Ga. App. 2019).  "Although an insurer need not indemnify an insured for a liability the insured incurs outside the terms of the insurance contract, an insurer must provide a defense against any complaint that, if successful, might potentially or arguably fall within the policy's coverage."  *Elan*

---

[1] There is some evidence that Maull may have been driving the vehicle on the night of the incident, but Nautilus has not advanced this as a reason to defeat summary judgment on appeal.

8

*Pharm. Research Corp. v. Emp'rs Ins. of Wausau*, 144 F.3d 1372, 1375 (11th Cir. 1998) (citing *Penn-Am. Ins. Co.*, 490 S.E.2d at 376). Courts compare the language of the policy to the allegations of the complaint "to determine whether a liability covered by the policy is asserted." *Fireman's Fund Ins. Co. v. Univ. of Ga. Athletic Ass'n*, 654 S.E.2d 207, 209 (Ga. App. 2007) (quoting *Penn-Am. Ins. Co.*, 490 S.E.2d at 376). An insurer is obligated to defend even when the allegations against the insured are ambiguous or incomplete with respect to the issue of insurance coverage. *Penn-Am. Ins. Co.*, 490 S.E.2d at 376.

For an insurer to be excused from its duty to defend, the facts as alleged must "unambiguously exclude coverage under the policy." *HDI-Gerling Am. Ins. Co.*, 701 F.3d at 666; *Penn-Am. Ins. Co.*, 490 S.E.2d at 376. "If the facts as alleged in the complaint even arguably bring the occurrence within the policy's coverage, the insurer has a duty to defend the action." *Hoover*, 730 S.E.2d at 418. Any doubts about the duty to defend should be resolved in favor of the insured. *Id.* Furthermore, any exclusion in the contract is to be strictly construed. *Richards v. Hanover Ins. Co.*, 299 S.E.2d 561, 563 (Ga. 1983).

Although an insurer has no obligation to independently investigate claims when a complaint alleges facts that unambiguously fall outside of coverage, if an insured notifies the insurer of facts that would cause the claim to potentially fall within coverage, the insurer still has a duty to defend if an investigation establishes

potential coverage.  *See Colonial Oil Indus. v. Underwriters Subscribing to Policy Nos. TO31504670 & TO31504671*, 491 S.E.2d 337, 339 (Ga. 1997).

We affirm the District Court's ruling that Nautilus has a duty to defend Flor. According to the policy, Nautilus must defend any suit against an insured, regardless of whether the allegations are "groundless, false, or fraudulent."  The policy provides that Flor, as the named-insured policyholder, is covered "while using any automobile."  The policy defines "using" as "maintaining, entrustment to others, operating, loading, or unloading."  The underlying suit asserts claims against Flor for negligent maintenance and negligent entrustment that arguably fall within the policy's coverage.

Neither exclusion 7 nor exclusion 18 function to "unambiguously exclude coverage under the policy."  For exclusion 7—the business pursuits exception—the District Court held that because Volinksi was driving her boyfriend, Maull, to work, she was "arguably engaged in a personal errand, which is not a business pursuit on behalf of Flor."  Nautilus argues that the vehicle was a "moving billboard" for Flor's company, Peachstate, and was only provided to Volinski to help her work for Flor's company, Peachstate.

We agree with the District Court.  The facts as established by the parties still indicate potential coverage.  Volinski was employed by Peachstate—not by Flor

10

directly.  Peachstate did not own the vehicle.  Flor did.  Volinski was not driving the vehicle on a business pursuit of Flor when she was driving her boyfriend to his place of employment.  Even assuming the promotional advertising qualifies as a business pursuit, it was arguably a pursuit of Peachstate rather than of Flor and therefore the claim potentially falls within the coverage provided by the Nautilus policy.

For exclusion 18, the District Court determined that (1) the automobile was not furnished to Volinski by her employer, but by Flor and (2) the underlying Infinity policy provided coverage.  We agree—if either of these are arguably true then Nautilus has a duty to defend Flor.  Since the automobile was owned by Flor personally rather than by Peachstate, it is arguable that the vehicle was not provided by Volinski's employer.  And as Infinity tendered its policy limits to resolve the underlying suit, it is arguable that the loss was covered by an underlying policy.

The District Court properly concluded that the allegations of the underlying complaint, even viewing the evidence in Nautilus's favor, were sufficient to assert a claim against Flor that, at least arguably, was not unambiguously excluded by either exclusion 7 or exclusion 18.  Therefore, Nautilus has a duty to defend Flor against all claims asserted.

11

V.

The District Court *sua sponte* granted summary judgment for Volinski, concluding that Nautilus's duty to defend Flor resolved whether Nautilus has a duty to defend Volinski.[2]  Nautilus argues that Volinski is not an insured under the policy and as such, Nautilus has no duty to defend her.

The policy provides that "[a]ny person using [a covered automobile] with your permission" is an "insured."  The only question is whether Volinksi had Flor's permission to drive the vehicle.[3]

The policy does not define the phrase "with your permission."  Georgia courts interpret the phrase "with your permission" to relate to the scope of the purpose for which the permission was given, rather than to the manner of the vehicle's operation or to whom operates the vehicle.  *Allstate Ins. Co. v. Spillers*, 555 S.E.2d 489, 491 (Ga. App. 2001).  Georgia uses an objective inquiry test to

---

[2] A district court may enter summary judgment *sua sponte* provided the losing party "was on notice that she had to come forward with all of her evidence."  *Burton v. City of Belle Glade*, 178 F.3d 1175, 1203 (11th Cir. 1999).  At the evidentiary hearing, the District Court stated that it would provide Nautilus an opportunity to be heard regarding summary judgment for Volinksi.  The record does not contain any evidence that Nautilus requested a hearing or submitted written objections to the District Court.  Nautilus does not raise a failure to be heard as an error in this appeal.

[3] Although Georgia compares the allegations of the underlying complaint to determine whether the insurer has a duty to defend an insured, it considers the true facts, rather than the allegations of the underlying complaint, to determine who is an "insured."  *See, e.g.*, *Strickland v. Ga. Cas. & Sur. Co.*, 162 S.E.2d 421, 425 (Ga. 1968); *Georgia Farm Bureau Mut. Ins. Co. v. Allstate Ins. Co.*, 379 S.E.2d 619, 620 (Ga. App. 1989).

determine "whether a reasonable person could conclude under the circumstances that the use of the [vehicle] fell within the scope of the permission granted by the policyholder." *Id.* at 491.

There is a genuine issue of material fact for whether Volinski was using the vehicle within the scope of the permission granted by Flor. There is conflicting testimony about whether any restriction was placed on Volinski's use of the vehicle, as Volinski testified that Flor did not place any limitations on her use of the vehicle and Flor testified that he restricted Volinski's use of the vehicle "to and from work only." Considering that the conversation was admittedly short, that Volinski had access to a set of keys to the vehicle, that other employees had used the vehicle for more than commuting purposes, that the vehicle was taken in for repairs and given back to her to use, and that there was no timeframe placed on her use of the vehicle or questions regarding her commute, a reasonable person could conclude that Flor's grant of permission encompassed more than just driving to and from work.

Nautilus points to *Clayton v. Southern General Insurance Co.*, 702 S.E.2d 446, 448 (Ga. App. 2010), *Conklin v. Acceptance Indemnity Insurance Co.*, 702 S.E.2d 727, 729 (Ga. App. 2010), and *Prudential Property & Casaulty Insurance Co. v. Walker*, 464 S.E.2d 230, 231 (Ga. App. 1995) as examples of cases where the borrower exceeded the scope of permission. In those cases, the circumstances

13

of the arrangement clearly indicated that there were prohibitions on usage.  For example, in *Clayton*, the owner of the vehicle "always demanded that no one else drive the car and that [the driver] return it immediately after completing her errands."  702 S.E.2d at 448.  In *Conklin*, the borrower "signed a vehicle test-drive or use agreement agreeing that he would 'not allow anyone to drive the vehicle other than my spouse or myself.'"  702 S.E.2d at 729.  In *Prudential*, the borrower was told "not to loan the car to anybody, and he was expressly instructed not to go to Florida, Savannah, or anywhere else."  464 S.E.2d at 231.  But here, unlike in those cases, we do not have such clear evidence that Flor prohibited Volinski from using the vehicle for a personal purpose.  Therefore, implied permission to use the vehicle for general transportation purposes, not inconsistent with Flor's express permission to use the vehicle for transportation "to and from work," could exist.

Even if Flor did place restrictions on Volinski's use of the vehicle, a reasonable jury could conclude that Flor acquiesced to her use of the vehicle for more than commuting when he decided not to take the keys back or to otherwise cancel his permission after he learned that she was using the vehicle more frequently than he had originally permitted.  Because fact questions exist regarding the scope of permission for Volinski's use of Flor's vehicle, we **VACATE** the District Court's grant of summary judgment on Nautilus's duty to defend Volinski.

14

**SO ORDERED.  AFFIRMED** in part, **VACATED** in part, and

**REMANDED** for further proceedings.